Marlene SMITH and Gerald Smith,
Plaintiffs-Appellants,

v.

SNO EAGLES SNOWMOBILE CLUB,
INC., General Casualty Company of
Wisconsin, Headwaters Trails, Inc., and
Western World Insurance Company,
Inc., Defendants-Appellees,

and

Michelle M. Hafer and State Farm
Mutual Automobile Insurance
Company, Defendants.

No. 86–1413.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1986.

Decided July 16, 1987.

Alyson K. Sloan, Warshafsky, Rotter, Tarnoff & Gesler, Milwaukee, Wis., for plaintiffs-appellants.

John M. Swietlik, Jr., Cook & Franke, S.C., Milwaukee, Wis., Timothy F. Mentlowski, Riordan, Crivello, Carlson & Mentlowski, Milwaukee, Wis., for defendants-appellees.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Marlene and Gerald Smith, the plaintiffs-appellants, appeal the district court's grant of summary judgment in favor of the Sno Eagles Snowmobile Club, Inc., General Casualty Company of Wisconsin, Headwaters Trails, Inc., and Western World Insurance Co., Inc. We affirm.

I

On December 30, 1983, the plaintiff-appellant Marlene Smith was injured when the snowmobile she was driving was struck by an automobile operated by Michelle Hafer in an area described as a snowmobile

trail ("Two East Trail") running parallel to Wisconsin State Highway 70 in Eagle River, Wisconsin (Vilas County), and intersecting with the Hafer's private driveway. The snowmobile trail was planned and constructed by the Sno Eagles Snowmobile Club, Inc. ("Sno Eagles") and was groomed by Headwaters Trails, Inc. ("Headwaters"), a snowmobile trail grooming organization. Both Sno Eagles and Headwaters are volunteer non-profit organizations who operate in the Eagle River, Wisconsin area. Sno Eagles' primary purpose is to promote the establishment and maintenance of snowmobile trails in the Eagle River area while Headwater's main purpose is to groom the existing snowmobile trails in the Eagle River area. The Two East Trail was shown as operational on the 1983-84 trail maps[1] but was not complete as a number of the directional and warning signs had not been installed. Mrs. Smith and her husband brought suit against Hafer, Sno Eagles, Headwaters, and their insurers alleging that each party's negligence was a substantial factor contributing to her serious personal injuries.

The land upon which Sno Eagles and Headwaters established and groomed the snowmobile trails included stretches of privately as well as governmentally owned land. The point where the accident occurred is owned by the United States Forest Service. Sno Eagles' procedure was and is to gain permission from the landowners to construct snowmobile trails through their property. Once the trail is constructed and operational, signs are placed to designate the trail pathway. In addition, warning signs are placed at driveway and roadway intersections. After the trail is completed and the necessary signs are in place, personnel of Headwaters, Inc. groom it on a regular basis. Although Headwaters' primary function is the grooming of the trails, at times it also engages in such related activities as aiding in the removal of tree stumps and bulldozing on the snowmobile paths.

**1.** From the record it appears that a trail map depicts what trails are open to the public for

Sno Eagles constructed the Two East trail where Mrs. Smith's injury occurred. Headwaters' personnel groomed the trail on December 22 and 27, 1983. At the time of the accident the trail was only partially marked as a number of the directional and warning signs had not been installed; in addition, the intersection where the accident occurred was not marked with warning signs. James Ayers, the "trail boss of Sno Eagles," in his deposition stated that the intersection where Mrs. Smith was injured was not marked because the Sno Eagles had run short of signs. Asa Roxbury, the president of Sno Eagles at the time of the accident, stated in his deposition that the trail was not open because it was still under construction.

On June 26, 1984, the Smiths brought this federal suit based on diversity against Sno Eagles Snowmobile Club, Inc. and Headwaters Trails, Inc. and their respective insurers. The defendants moved for summary judgment claiming that the Wisconsin Recreational Use Statute in effect at the time of the accident, Wis.Stat. § 29.68 exempted them from liability. Section 29.-68 provided:

"29.68 LIABILITY OF LANDOWNERS. (1) SAFE FOR ENTRY; NO WARNING. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on the premises to persons entering for such purpose, except as provided in sub. (3).

\*     \*     \*     \*     \*     \*

(3) LIABILITY. This section does not limit the liability which would otherwise exist:

(a) For wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity."

recreational snowmobiling.

The district court granted the appellees' motion for summary judgment finding that no genuine issue of material fact existed and the appellees were entitled to judgment as a matter of law since they were exempt from liability under § 29.68. *Smith v. Sno Eagles Snowmobile Club, Inc.,* 625 F.Supp. 1579 (E.D.Wis.1986). The trial court found that "[n]on-profit organizations such as Sno Eagles and Headwater which enter land for a limited purpose are occupants within the meaning of § 29.68, and that their liability is limited by that statutory section." *Id.* at 1582–83. The court also found that the plaintiffs, the Smiths, had not established that Sno Eagles' and Headwaters' actions in neglecting to properly maintain and mark the snowmobile trails were willful: "Sno Eagles [sic] and Headwaters' alleged actions in maintaining and marking snowmobile trails do not fall within the rubric of willfulness ..." *Id.* at 1583.[2]

The appellants appeal the district court's grant of summary judgment raising two issues: (1) did the trial court properly find Sno Eagles and Headwaters to be occupants of Two East Trail thus entitling them to immunity under Wisconsin's landowners recreational use immunity statute, Wis. Stat. § 29.68, and (2) did the district court properly find that Sno Eagles' and Headwaters' conduct did not constitute willfulness.[3]

## II

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "The primary purpose of a grant of summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Wainwright Bank & Trust Co. v. Railroadmen's Federal Savings and Loan Association of Indianapolis,* 806 F.2d 146, 149 (7th Cir. 1986). In reviewing the trial judge's grant of summary judgment, we must construe the facts alleged in the light most favorable to the plaintiffs-appellants (Smiths), who opposed the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986).

This case deals with the interpretation of a Wisconsin statute. Although the construction to be given a statute is an issue of law "[w]e follow the practice in diversity cases of giving substantial deference to the district court's interpretation of the law of the state in which the judge sits." *Goldstick v. ICM Realty,* 788 F.2d 456, 466 (7th Cir.1986); *see also Moore v. Tandy Corp.,* 819 F.2d 820 (7th Cir.1987).

The appellants argue that the district court erred in finding Sno Eagles and Headwaters to be protected by the Wisconsin Landowners Recreational Use Immunity Statute, Wis.Stat. § 29.68 since neither Sno Eagles nor Headwaters "stands in such relation to the land to be included within the legislative purpose of the statute and neither entity is an occupant of Two East Trail."[4]

---

**2.** We agree with the district court's determination that "Because of the close relationship of the two organizations and their complementary functions, ... they should be treated similarly under the law. If one is immune from liability under Wisconsin statutes, both should be." *Sno Eagles,* 625 F.Supp. at 1581.

**3.** The appellants have asked that we certify the issues in this appeal concerning the construction and application of § 29.68 to the appellees to the Wisconsin Supreme Court pursuant to Circuit Rule 52. We are not convinced that the law is unsettled so as to justify the use of that procedure. *Cf. Schaefer v. Heckler,* 792 F.2d 81, 84 n. 3 (7th Cir.1986).

**4.** Section 29.68 was repealed by the Wisconsin Legislature effective May 15, 1984, and was replaced by § 895.52. The appellees argue that § 895.52 should govern the disposition of this case, although they also argue the trial judge properly dismissed the appellant's claims under § 29.68. It is well-settled that statutes apply prospectively unless there is an express statement to the contrary in the legislative history. *Hunter v. School District of Gale-Ettrick-Tempealeau,* 97 Wis.2d 435, 444–45, 293 N.W.2d 515 (1980). But, procedural and remedial statutes "in the absence of clear legislative intent to the contrary ... will ... be given retroactive application providing vested rights are not disturbed." *Boggs v. Morden,* 117 Wis.2d 773, 775, 345 N.W.2d 490 (1984).

We are mindful in analyzing the Wis. Stat. § 29.68 that "[i]t is a basic rule of statutory contruction that in construing statutes, effect is to be given, if possible, to each and every word, clause and sentence in a statute, and a construction that would result in any portion of a statute being superfluous should be avoided wherever possible." *County of Columbia v. Bylewski*, 94 Wis.2d 153, 164, 288 N.W.2d 129 (1980). It is well established that "The purpose of statutory construction is to ascertain the intent of the legislature." *In Matter of Estate of Walker*, 75 Wis.2d 93, 104, 248 N.W.2d 410 (1977). A court must avoid construing a statute in a way that would undermine and defeat the legislative intent of the statute.

The Wisconsin Supreme Court in *LePoidevin v. Wilson*, 111 Wis.2d 116, 130, 330 N.W.2d 555 (1983), stated that "The legislative purpose of § 29.68 is 'to encourage the use of forest and farmlands for many outdoor recreational sports by restricting the common-law liability of the landowner to such users in various respects.'" (quoting *Copeland v. Larson*, 46 Wis.2d 337, 344, 174 N.W.2d 745 (1970)). Section 29.68(1) "[p]rotects persons who allow their land to be used for certain recreational purposes." *Strong v. Wisconsin Chapter of Delta Upsilon*, 125 Wis.2d 107, 110, 370 N.W.2d 285 (Ct.App.1985). As we noted earlier, section 29.68 provides:

"29.68 LIABILITY OF LANDOWNERS. (1) SAFE FOR ENTRY; NO WARNING. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on the premises to persons entering for such purpose, except as provided in sub. (3).

\* \* \* \* \* \*

(3) LIABILITY. This section does not limit the liability which would otherwise exist:

(a) For wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity."

The district court properly found that Sno Eagles and Headwaters were neither owners nor lessees of Two East Trail stating:

"The term 'owner' indicates an individual in whom one or more interests are vested for his own benefit. In contrast, a lessee is 'one who rents property from another.' It is clear that Sno Eagles and Headwater are not owners nor lessees within the general meanings of the terms. They do not hold title to the land on which they construct and groom trails, nor do they rent the land from the titled owners."

625 F.Supp. at 1582.

The appellants argue in their brief that "entities" such as Sno Eagles and Headwaters should have the power to permit or deny entry to the land in order to be entitled to the immunity provided in section 29.68. In support of their argument that the district court improperly determined that the appellees were "occupants," the appellants direct our attention to various definitions of occupant in dictionaries, Wisconsin court decisions, and other jurisdictions. The appellants assert that the case *Labree v. Millville Manufacturing, Inc.*, 195 N.J.Super. 575, 481 A.2d 286 (App.Div. 1984) is supportive of their argument. In *Labree*, the defendant (Gaskill—a contractor) seeking the protection of the New Jersey Recreational Use Statute [5] had con-

---

In the instant case the appellant's cause of action arose at the time of her injury (December 30, 1983) and her rights vested at that time. *See Hunter*, 97 Wis.2d at 443, 345 N.W.2d 490. If § 895.52 was labeled as a remedial or procedural statute it would have the effect of destroying or terminating the appellant's vested right in her cause of action. We thus refuse to hold that § 895.52 retroactively applies in this case.

**5.** The statute, N.J.S.A. 2A:42A–3a., provided in part:

"a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7–7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any

tracted to excavate land in the construction of a highway.[6] The excavation and transfer of sand and gravel resulted in the manmade creation of a twenty acre lake in which people swam on an informal basis. In 1977, the plaintiff David Labree dove into the lake and hit his head on an obstruction and was rendered a quadriplegic. The New Jersey Superior Court rejected Gaskill's claim of immunity stating:

> "[w]e believe use of the word 'occupant' in the statute signifies an intent to provide immunity for an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with Gaskill. It 'occupied' the property not really as one in occupancy but rather as one removing dirt and gravel from it."

481 A.2d at 291.

The *Labree* case is distinguishable from the instant case. In *Labree*, the defendant-contractor entered the land pursuant to a contract as part of a business agreement for the purpose of performing an excavation for the removal of sand and gravel for use on the bed of a highway; although not part of the contractual agreement, a twenty-acre lake resulted which was "used by members of the public for swimming and bathing but not on a formal basis." 481 A.2d at 288. In contrast, Sno Eagles and Headwaters did not enter upon the land where the Two East Trail snowmobile pathway is located for commercial gain (as they are non-profit) but only to build a recreational snowmobile trail for use by the public. As the New Jersey court noted in *Labree*, the defendant-contractor in that case never occupied the property it excavated "with a degree of permanence," *Id.* at 291, the contractor simply removed sand

and gravel from the land pursuant to its contractual obligations. The creation of a lake was not intended to be a part of the commercial venture. In the instant case, in contrast, Sno Eagles and Headwaters, volunteer non-profit organizations, had permission to create the recreational snowmobile pathway, to be known as Two East Trail, and used by the public. To the extent Sno Eagles and Headwaters constructed, maintained, and groomed Two East Trail for public use they occupied the trail "with a degree of permanence."

Since § 29.68 does not define occupant, the trial judge determined it was "necessary to ascertain what the Legislature intended by examining the general meaning of ... [the] term[ ]." 625 F.Supp. at 1582. We have recently stated that "In determining the common meaning of a word, a court may look to the definition of the word given in a recognized dictionary." *Arkwright-Boston Manufacturers Mutual Insurance Co. v. Wausau Paper Mills Co.,* 818 F.2d 591, 594 (7th Cir.1987). In the instant case the trial judge examined two accepted and well recognized sources[7] in finding that "occupy and occupant include persons who, while not owners or tenants, have the actual use of land." *Id.* The court further stated that:

> "While 'occupant' includes definitions of owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to 'occupant' the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner ...
> Sno Eagles and Headwaters occupy the land to the extent of constructing and grooming snowmobile trails."

---

activity on such premises to persons entering for such purposes,...."

**6.** Sand and gravel were needed from the excavation for use on the bed of the highway.

**7.** The district court cited two sources for definitions of occupant: *Blacks Law Dictionary* and *Webster's Third New International Dictionary* 1560 (G & C Merriam Co.1976). *Blacks Law Dictionary* defines occupant as:
"Person having possessory rights, who can control what goes on on premises. One who

has actual use, possession or control of a thing."
*Webster's* defines occupant as:
"a: one who takes first possession of something that has no owner and thereby acquires title by occupancy by one who takes possession under title, lease or tenancy at will 2a: one who occupies a particular place or premises ... b: one who holds a particular post ... 3: one who has actual use for possession of something ..."

*Id.* We agree with the district court's determination that the term "occupant" in section 29.68 applies to Sno Eagles and Headwaters to the extent they constructed and groomed Two East Trail. If we were to circumscribe and interpret "occupant" as one in actual possession or exclusive control the term would be indistinguishable from owner. This would negate and defeat the very intent of the Wisconsin legislature to open up as much land as possible for recreational use when it enacted section 29.68 and added the recreational activity of snowmobiling in 1970. *See Strong v. Wisconsin Chapter of Delta Upsilon,* 125 Wis.2d 107, 370 N.W.2d 285 (Ct.App.1985); *LePoidevin v. Wilson,* 111 Wis.2d 116, 330 N.W.2d 555 (1983); *Copeland v. Larson,* 46 Wis.2d 337, 174 N.W.2d 337 (1970). We agree with the trial court and hold that it properly found under section 29.68 that Sno Eagles and Headwaters were most properly classified as occupants of Two East Trail.

### III

The appellants argue that if we hold, as we have, that the district court properly determined that Sno Eagles Club, Inc. and Headwaters Trails, Inc. were occupants of Two East Trail, then the exception found in 29.68(3)(a) is applicable:

"(3) LIABILITY. This section does not limit the liability which would otherwise exist:

(a) For wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity."

The Smiths argue that Sno Eagles and Headwaters acted willfully[8] in that their actions included the failure to complete the marking of the trail and to alert snowmobilers of the fact that the trial was not considered open to the public inasmuch as they had knowledge that the Two East Trail was depicted on 1983–1984 snowmobile maps thereby suggesting that the trail was in fact open. The Smiths argue that this "conduct on the part of . . . the defend-ants bring each of them within the exception set forth in Wis.Stat. § 29.68(3)(a) for willful *failure to guard or warn against the danger on this trail . . .*"

In rejecting the appellants' claim that the appellees acted willfully the district court stated:

"The complaint alleges that Sno Eagles and Headwater were *negligent* in the maintenance of the snowmobile trails and in their failure to adequately mark the trails with safety signs. *No facts even remotely pointing to willful misconduct have been presented in the affidavits with the deposition testimony submitted in opposition to defendants' motions.*"

625 F.Supp. at 1583 (emphasis added). In support of its finding the district court looked to this court's decision in *Monday v. United States,* 421 F.2d 1210 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), in which we defined willful as:

"... a voluntary, conscious and intentional act, done *without reasonable cause,* ... a willful act may also be described as one done intentionally, knowingly, and purposely, *without justifiable excuse,* as distinguished from an act done carelessly, thoughtlessly, needlessly or inadvertently."

421 F.2d at 1215 (emphasis in original).

Prosser and Keeton, authorities on torts, have stated that the "usual meaning" assigned to "willful" (as well as reckless and wanton) "[i]s that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow ..." Prosser and Keeton *Handbook of the Law of Torts* § 34 at 213 (5th ed. 1984). Prosser and Keeton's definition of willfulness requires that three elements be established: (1) the actor do an intentional act of an unreasonable character (2) in disregard of a *known or obvious risk* that was great (3) as to make it *highly probable* that harm

**8.** The appellants do not argue that either Sno Eagles or Headwaters were malicious in their actions.

would follow. In the instant case, the appellees allegedly failed to properly mark the trail (since they ran out of signs) and alert snowmobilers to the fact that the trail was not considered to be open for public use even though it was shown as being operative on existing 1983–1984 snowmobile maps. We hold that Sno Eagles and Headwaters did not intentionally take actions of "an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow …" *See,* Prosser and Keeton, *supra.* The appellees' actions at most amount to negligence but clearly do not rise to the level of a "willful … failure to guard or to warn against the dangerous condition." We agree with the district court and hold that the appellees' actions were not of a willful nature.

### IV

We hold that the district court properly found under Wis.Stat. § 29.68 that Sno Eagles and Headwaters were occupants of Two East Trail to the extent of constructing and grooming the trail. We also hold that the trial court properly found that Sno Eagles and Headwaters' conduct under § 29.68 did not rise to a "willful … failure to guard or to warn against a dangerous condition." We affirm the district court's grant of summary judgment in favor of the appellees since there was no genuine issue of material fact and the appellees were entitled to judgment as a matter of law.

AFFIRMED.