John J. MOONEY, Plaintiff-Respondent,

v.

ROYAL INSURANCE COMPANY OF AMERICA, a
foreign insurance corporation, and Lions Club of
Minocqua, Inc., a Wisconsin nonprofit corporation,
Defendants-Appellants.†

Court of Appeals

*No. 90-2445. Submitted on briefs June 28, 1991.—Decided
September 4, 1991.*

(Also reported in 476 N.W.2d 287.)

† Petition to review granted.

On behalf of defendants-appellants, the cause was submitted on the briefs of *Robert A. Kennedy* of *Kennedy Law Office* of Crandon.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *Thomas N. Akey* of Mincoqua.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Royal Insurance Company of America and Lions Club of Minocqua, Inc., (jointly, the club), appeal a final judgment denying its motion for judgment notwithstanding the verdict, the awarding of $1,240 attorney fees as a sanction under sec. 804.12(3), Stats., and $50 motion costs under sec. 814.07, Stats. The court upheld the jury verdict that found the club 50% negligent in causing John Mooney's snowmobile accident by leaving snow mounds on Lake Minocqua five days after their "Winterama" event concluded.

The court refused to grant a post-verdict motion seeking to hold the club immune from liability under sec. 895.52, Stats., the recreational use immunity statute. The court concluded that the club was not immune because it did not "occupy" the premises within the meaning of the statute when the snowmobile accident occurred. The court also awarded Mooney $50 costs pursuant to sec. 814.07, Stats., and $1,240 in attorney fees under sec. 804.12(3), Stats., the latter based upon a finding that the club denied requests to admit to facts for which there were no reasonable grounds to believe that it would prevail at trial. We affirm.

The club does not challenge the jury's finding of negligence, and the material facts of the case are now undisputed. Pursuant to a town ordinance, the club requested and received permission from the town board of Minocqua to place structures on the lake in order to conduct a speed race. According to the minutes of a town board meeting, a special committee of the board stated that structures would have to be removed within one week after the event was over.

The radar run speed race was part of the club's annual fund-raising event, referred to as "Winterama." The race was held on Saturday, January 25, 1986. On Saturday evening, after the race was completed, members of the club removed the plastic flags, timing equipment and the picket fence used for spectator control. The club members also attempted to flatten out the area of the track.

On Sunday, the day after the race, the chairman of the club's safety committee for the event inspected the area where the race was held and concluded that no further cleanup would be necessary. The chairman testified that on that morning, he believed they had accomplished their goal of returning the surface of the lake as much as possible to its natural state. Both he and the club's president further testified that by Sunday night the club had concluded all activities on Lake Minocqua and had no plans to conduct any further activities.

On Friday, January 31, 1986, Mooney, while riding his snowmobile with several friends, hit a large mound comprised of frozen snow approximately three to four feet high on the lake. He was traveling at approximately forty-five to fifty miles per hour. The mound that Mooney hit, and similar mounds that were found in the area, were produced by members of the club when they

had plowed the ice in order to create a race track but had not been removed in the clean up.

Based on these facts, the jury found the club 50% negligent in causing Mooney's snowmobile accident. Both sides filed motions after the verdict was rendered. Mooney filed a motion asking for costs and fees. The club moved for judgment notwithstanding the verdict, arguing that it was immune under sec. 895.52, Stats. The trial court awarded Mooney $1,240 pursuant to sec. 804.12(3), Stats., $50 pursuant to sec. 814.07, Stats., and denied the club's motion. The club is now appealing these decisions.

Section 895.52(2)(b), Stats., provides that: "[N]o owner . . . is liable for any injury to . . . a person engaging in a recreational activity on the owner's property . . .."

Section 895.52(1)(d), Stats., defines "owner" as:

1.   A *person,* including a governmental body or nonprofit organization, that owns, leases or *occupies property.*

2.   A governmental body or nonprofit organization that has a recreational agreement with another owner. (Emphasis added.)

Snowmobiling is a recreational activity under sec. 895.52(1)(g), Stats. Thus, the club's immunity hinges on whether it was an owner for purposes of sec. 895.52(1)(d). The club concedes that it did not lease the land or have a recreational agreement, but claims that it was an owner under the statute because, five days before the accident occurred, it was an occupant of the accident site. We conclude that the club was not an occupant at the time of the accident because they had finished cleaning up and had left the premises with no intent to return.

520

Therefore, the club is not entitled to immunity under sec. 895.52.

■

The interpretation and application of a statute is a question of law that we decide without deference to the trial court. *Simanek v. Miehle-Goss-Dexter,* 113 Wis. 2d 1, 4, 334 N.W.2d 910, 911 (Ct. App. 1983). In *Smith v. Sno Eagles Snowmobile Club,* 823 F.2d 1193 (7th Cir. 1987), the seventh circuit considered whether two snowmobile organizations qualified as occupants under sec. 29.68, Stats. (1981), Wisconsin's former recreational use statute. The court held that the organizations were immune because they occupied the land to the extent that they were engaged in constructing and grooming a snowmobile trail. *Smith,* 823 F.2d at 1197. The court stated that the term "occupant" included persons other than merely tenants or owners. *Id.* The court, quoting *Smith v. Sno Eagles Snowmobile Club,* 625 F. Supp. 1579, 1582 (E.D. Wis. 1986), stated that:

> While "occupant" includes definitions of owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner . . ..

*Smith,* 823 F.2d at 1197.

In *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 490-91, 431 N.W.2d 696, 698 (Ct. App. 1988), we adopted the preceding definition of "occupant." *Hall* involved a fair sponsored by the Turtle Lake Lions Club, during which Hall stepped in a hole injuring himself. We concluded that the club was immune because while it was holding a fair on the land of another, it occupied the

521

land within the meaning of sec. 895.52(1)(d), Stats. *Hall,* 146 Wis. 2d at 490, 431 N.W.2d at 698.

*Smith* and *Hall* are distinguishable from the present fact situation. In *Smith* and *Hall,* the organizations were still conducting activities on the premises when the accident occurred. While an "occupant" need not be in actual possession or exclusive control, *Smith,* 823 F.2d at 1198, he cannot totally abandon the premises. In the present situation, the club had concluded all of its activities five days before the accident occurred and did not intend to return.

The club argues that its permit gave it licensee status and occupancy for seven days after Winterama concluded[1] in order to allow them to take down all structures placed on the lake. The statute refers to the occupant of the premises and not to a licensee, and therefore the question to consider is whether the club was an occupant. *See Smith,* 625 F. Supp. at 1582.

The club argues, however, that if we preserve its "occupancy" until the permit has expired, the purpose of sec. 895.52, Stats., to encourage public access to property, would be fostered, that is, a permit for a specified time creates a bright-line test that courts could administer consistently. It argues that effectively ending the term of a permit prior to its expiration date frustrates this purpose because it creates a potential for arbitrary and inconsistent application of the statute. We disagree.

While we recognize that sec. 895.52, Stats., should be liberally construed in favor of property owners in

---

[1]According to the club, this permit was given by the town of Minoqua when the special committee made its report to the town meeting, and that report was recorded into the meeting's minutes. For the purposes of this opinion we will accept the club's contention that a permit was in fact granted.

order to open up land for recreational activity, *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 477, 464 N.W.2d 654, 660 (1991), we must also recognize that immunity is not unlimited:

> Section 895.52 was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences. Rather, it is the result of a balancing of policy considerations and a conscious decision by the legislature that the advantages to the public of opening land for recreational use outweigh the possibility of injury to the entrants.

*Id.* at 477, 464 N.W.2d at 660.

We might agree with the club's bright-line rule where the evidence of abandonment is ambiguous and reasonably susceptible to conflicting intentions. In those circumstances, immunity may extend for the length of a lease or a permit. Where, however, the evidence unequivocally shows an intentional and permanent abandonment of the premises, the club cannot be considered an occupant under sec. 895.52(1)(d)1, Stats., and is therefore not entitled to immunity.

Furthermore, the club's post-accident remedies cannot alter its status. The alleged plowing of the lake, placing of barricades and the club's offer to respond to complaints took place after Mooney's injury. After-the-fact activities cannot serve as a basis to negate the prior intent to abandon the premises.

We also reject the club's argument that it was an occupant because it met the definition of Restatement (Second) of Torts § 328E(b) (1965), which defines possessor of land as follows: "a person who has been in occupation of land *with intent to control it,* if no other

person has subsequently occupied it with intent to control it . . .." (Emphasis added.)

Assuming that the meaning of "occupant" is the same as the meaning of "possessor of land," the club still does not meet the definitional requirements set forth in the Restatement. According to all of the testimony, the club had no intent to control the premises after Winter-ama concluded.

■

Next, the club appeals the $50 motion costs it was charged pursuant to sec. 814.07, Stats. Counsel for the club filed a 480-page legislative history of the immunity statute. Concerned with the needless burden of filing a voluminous document with the clerk of court, the court ordered it removed from the file. Counsel then brought a motion to refile the document, even though the court had already made its decision interpreting the statute. When asked for the reason for refiling, counsel suggested first that the court did not have the authority to "unfile" a document and, further, that it would be relevant to this court on appeal. The attempt to refile this document served no purpose. The trial court had made its decision, and this court obviously can review the law without resort to the court file. The imposition of motion costs was justified and did not constitute an abuse of discretion.

■

The club also appeals the awarding of attorney fees for failing to admit pursuant to sec. 804.12(3), Stats.[2]

---

[2]Section 804.12(3) provides:

> Expenses on failure to admit. If a party fails to admit the . . . truth of any matter as requested . . . and if the party requesting the admissions later proves . . . the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay . . . the reasonable expenses incurred in the making of that

The trial court had ample grounds to award sanctions under this section because the club failed to admit to certain facts when they had no reasonable belief that they might prevail on the matter at trial. For example, the trial court found that the club avoided admitting that the snow mounds were made by them, when their own officers and members knew without a doubt that they were.

The court imposed a sanction in the form of attorney fees. Where the judge is aware of the amount of time consumed at trial, the nature and complexity of the issues involved and has observed the quality of the services rendered, he then has the expertise to evaluate the reasonableness of the fees without a further hearing. *Tesch v. Tesch,* 63 Wis. 2d 320, 334–35, 217 N.W.2d 647, 654 (1974). Although *Peterson v. Gauger,* 148 Wis. 2d 231, 434 N.W.2d 819 (Ct. App. 1988), stands for the proposition that where the reasonableness of the fees is disputed record evidence is needed, it is not controlling here. The reason for a hearing as to the amount of attorney fees is a concern for due process. *Tesch,* 63 Wis. 2d at 334, 217 N.W.2d at 654. In *Peterson,* the party challenging the fees had the first opportunity to review the requested fees on the day of the hearing on a default judgment. Counsel requested the opportunity to be heard on his challenge "on appropriate notice," but the trial court denied the request for an adjournment. *Id.* at 237, 434 N.W.2d at 821. That problem is not presented here. The request for fees was made by motion and a detailed affidavit filed with the court on May 30. The court heard arguments on the motion almost a month later. Defense

proof, including reasonable attorney's fees. . . . unless . . . the party failing to admit had reasonable ground to believe that he or she might prevail on the matter . . ..

counsel submitted no proofs to counter the affidavit in support of the attorney fee; he merely challenged the sufficiency of the proofs in support of the claim. The trial court reduced the claim from $3,050 to $1,240. In making the award, the court considered its own trial notes showing that five named witnesses consumed a full day of trial on matters that were attributable to defendant's failure to timely admit. It found that plaintiff's counsel's time for one day of trial was $900 and allowed four hours of preparation time at $85 per hour. This procedure and these findings do not violate due process, and no further hearing was necessary.

*By the Court.*—Judgment affirmed.