280 Wis.2d 765 (2005)
2005 WI App 81
695 N.W.2d 889
Lisa M. LEU, Plaintiff-Appellant,[]
v.
PRICE COUNTY SNOWMOBILE TRAILS ASSOCIATION, INC., Spirit Lake Northwoods Riders, Inc. and General Casualty Company of Wisconsin, Defendants-Respondents,
Arthur ZIETLOW and Church Mutual Insurance Company, Defendants.
No. 04-1859.
Court of Appeals of Wisconsin.
Submitted on briefs February 21, 2005.
Decided March 22, 2005.
On behalf of the plaintiff-appellant, the cause was submitted on the brief of Paul A. Nikolay of Nikolay Law Offices.
On behalf of the defendants-respondents, the cause was submitted on the brief of Matthew E. Yde and Douglas R. Ross of Strasser & Yde, S.C. of Wausau.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
*767 ¶ 1. CANE, C.J.
Lisa Leu appeals a summary judgment concluding that Price County Snowmobile Trail Association, Spirit Lake Northwoods Riders, Inc., and their insurer, General Casualty Company of Wisconsin, are immune from liability under Wisconsin's Recreational Immunity Statute, WIS. STAT. § 895.52.[1] Leu contends the circuit court erred when it found that the Snowmobile Trail Association and the Northwoods Riders were "occupants" of the property on which her husband was killed. Leu argues that Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193 (7th Cir. 1987), is not controlling and, as a matter of public policy, should not be applied because the federal court's definition of "occupancy" runs counter to the *768 purposes of Wisconsin's recreational immunity statute. Even if the Smith definition of occupant applies, Leu argues alternatively, summary judgment is still inappropriate in this case because there are genuine issues of material fact as to whether the Snowmobile Trail Association and the Northwoods Riders were actually occupiers. Because the material underlying facts are undisputed and the Snowmobile Trail Association and the Northwoods Riders are entitled to immunity as occupants under § 895.52, we affirm the judgment.

BACKGROUND
¶ 2. On March 7, 2002, Leu's husband, Lonnie, was struck and killed by a falling tree while snowmobiling on a groomed snowmobile trail in Price County. The accident occurred on a portion of the trail that ran through Mildred Briant's property. Joseph Massa, who cut down the tree, was removing wind-damaged trees at the request of a neighboring property owner when he mistakenly strayed onto Briant's land.
¶ 3. In 1995, Briant signed a snowmobile easement agreement with Price County, authorizing the County or its agents to construct and maintain a snowmobile trail across the easement. In 2001, Price County contracted with the Snowmobile Trails Association to groom the County's trails. The Association is a non-profit organization whose membership consists of two delegates from each of Price County's riding clubs. The Association owns and maintains trail grooming equipment and controls when and how the trails will be groomed. The Northwoods Riders is one of a number of snowmobile riding clubs in Price County.[2] Incorporated *769 in 1986, the Northwoods Riders is a non-profit group whose members receive no salary or compensation for building, maintaining, and grooming snowmobile trails. The Northwoods Riders were responsible for grooming the trail on which Lonnie was killed.
¶ 4. Under her easement agreement with the county, Briant was supposed to provide advance notice of any logging that would take place. But Briant never gave permission to Massa to log on her land. Therefore neither the Snowmobile Trails Association nor the Northwoods Riders had any prior warning of logging near that portion of the trail. On the night before Lonnie's accident, sometime between 6 p.m. and 9 p.m., Gary Becker was grooming the trial for the Northwoods Riders when he noticed evidence that some kind of logging was taking place. Becker decided that he would come back later and post "logging ahead" signs on the trail. When Becker returned in the early evening of the following day, the accident had already occurred.
¶ 5. Leu brought a negligence suit against Massa and later amended her complaint, adding Massa's insurer, Arthur Zietlow (the neighbor who had given Massa permission to log his property), Zietlow's insurer, the Snowmobile Trails Association, the Northwoods Riders, and General Casualty. Leu's amended complaint alleged that the snowmobile groups negligently breached their duty by not providing appropriate safeguards and warnings on the trail. The Snowmobile Trails Association and the Northwoods Riders moved for summary judgment on the ground that they were immune from liability under the recreational immunity statute. The circuit court initially denied the motion, concluding there were material issues of fact as to whether the two organizations were actually non-profit organizations. However, following a motion for reconsideration *770 and a hearing, the circuit court granted summary judgment to the Snowmobile Trails Association and the Northwoods Riders. Leu now appeals.

STANDARD OF REVIEW
[1-4]
¶ 6. We review grants of summary judgment using the same methodology as the circuit court. Fox v. Catholic Knights Ins. Soc'y, 2003 WI 87, ¶ 17, 263 Wis. 2d 207, 665 N.W.2d 181. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Immunity under WIS. STAT. § 895.52 is a defense to a negligence claim that might entitle a moving party to judgment. Whether the statute applies in a particular case involves questions of statutory interpretation and the application of law to facts that we review without deference. See Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 349, 575 N.W.2d 734 (Ct. App. 1998).

OCCUPANTS AND RECREATIONAL IMMUNITY
¶ 7. Under Wisconsin's recreational immunity statute, owners and officers, employees, and agents of owners are generally not liable for injuries to those who enter the owner's property to engage in recreational activity. WIS. STAT. § 895.52(2). Owners have no "duty to keep the property safe for recreational activities ... to inspect the property ... [or] give warning of an unsafe condition, use or activity on the property." Id. In the case of non-profit organization owners, this broad grant *771 of immunity does not extend to injuries caused by malicious acts or malicious failures to warn. See WIS. STAT. § 895.52(5).[3]
¶ 8. For the purposes of recreational immunity, an "owner" is either a "person, including a governmental body or nonprofit organization, that owns, leases or occupies property" or a "governmental body or nonprofit organization that has a recreational agreement with another owner." WIS. STAT. § 895.52(1)(d)1. and 2. Leu does not contest the circuit court's decision that the Snowmobile Trails Association and the Northwoods Riders are non-profit organizations, bringing them partially within the statute.
¶ 9. The sole question on appeal therefore is whether the Snowmobile Trails Association and the Northwoods Riders are "owners" according to the statute's first definition of "owner," one who "occupies" the property. In 1987, in a diversity case applying Wisconsin law, the Seventh Circuit concluded that two non-profit organizationsone planned and constructed trails, the other groomed themwere occupants under the state's old recreational immunity statute, WIS. STAT. § 29.68.[4]Smith, 823 F.2d at 1194. Smith noted that the *772 legislature intended the law "to encourage the use of forest and farmlands for many outdoor recreational sports by restricting the common-law liability of the landowner ...." Id. at 1196 (citation omitted). Given the legislature's intent, the court rejected the argument that an occupant was only one "in actual possession" or "exclusive control." Id. at 1198. Such a definition would narrow the statute's applicability by making an "occupant" indistinguishable from an "owner." Id. It would also defeat the legislature's specific goal when it amended the recreational use statute in 1970 to include snowmobiling. Id. By constructing and grooming a particular trail, the two clubs occupied the property with a degree of permanence sufficient for the purposes of the statute. Id. The court did not distinguish between the groups because of the close relationship between the organizations and their complementary functions. Id. at 1195. If one was immune from liability under Wisconsin law, the court concluded, the other was as well. Id.
¶ 10. Leu argues that Smith does not apply because it construes the old recreational immunity statute and, therefore, has no precedential value, and because federal decisions applying Wisconsin law are not binding on this court. See West Bend Mut. Ins. Co v. Berger, 192 Wis. 2d 743, 755, 531 N.W.2d 636 (Ct. App. 1995).
¶ 11. In 1988, however, several years after WIS. STAT. § 895.52 became law, this court approved Smith's *773 construction of "occupant" in Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 490-91, 431 N.W.2d 696 (Ct. App. 1988). Noting that the new recreational immunity statute retained as a definition of "owner" one who "occupies a property," we adopted specific language from Smith. Id. Occupants, we concluded, included persons who have the "actual use of the property without legal title, dominion or tenancy. ... [T]he term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner." Id. at 490-91. Using that definition, we determined that when the Lion's Club sponsored a fair on the Turtle Lake Village Park grounds, they become an occupier of the property, granting entry to the public for recreational purposes. Id. at 487. Leu is thus correct that Smith does not control the disposition of her case, but incorrect that Wisconsin courts have not adopted the essential elements of the Smith definition of occupant.[5]
¶ 12. Leu directs us to an Arizona case for persuasive authority that Smith's definition of "occupancy" is incompatible with the recreational immunity statute. See Ward v. Arizona, 890 P.2d 1144 (Az. 1995). Ward's not interpreting Wisconsin's law, however, and Arizona courts are required to construe the state's recreational immunity statute strictly.[6]Id. at 1146. Ward's fundamental criticism of Smith is that extending immunity to those who do not control entry into the *774 land does not serve the legislative intent of encouraging private landowners to allow their lands to be used for recreational purposes. Id. at 1148.[7]
[5]
¶ 13. Despite Leu's argument, the Wisconsin legislature did not have such a limited idea of what would serve public policy. Wisconsin's recreational immunity statute provides a second definition of "owner" "governmental body or nonprofit organization that has a recreational agreement with another owner." WIS. STAT. § 895.52(1)(d)2. "Recreational agreement" is then defined as "a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specified part of the owner's property for any recreational activity." WIS. STAT. § 895.52(1)(h). As this definition makes clear, the legislature intended to extend liability to nonprofit groups, like snowmobiling associations, or government entities if they obtained the kind of easement at issue in this case. It would be unreasonable to read the statute as allowing a snowmobile association immunity if it were granted an easement directly, but disallowing it if the easement went first to a government entity, which then arranged with the association to manage, maintain, and construct the trails necessary for recreational access. We thus conclude that the Smith definition of "occupant" applies to the Wisconsin recreational immunity statute and the Snowmobile Trail Association and *775 the Northwoods Riders are occupants of the property on which Lonnie Leu was killed under that statute.[8]
¶ 14. Leu argues, however, that even if we conclude the Smith definition of occupant applies, summary judgment is not appropriate because there are material questions of fact about what the clubs actually did and because Smith stressed trail construction as opposed to trail maintenance. We disagree.
[6]
¶ 15. As we noted earlier, Smith addressed two organizations which performed complementary functions with respect to snowmobile trails and concluded that those organizations had to be treated similarly for the purposes of recreational immunity. Here, a similar complementarity of function and commonality of purpose unites the two groups. The Snowmobile Trails Association contracted with the County, purchased and maintained most of the grooming machinery, and decided where and how to deploy the volunteer human resources of the Price County riding clubs.[9] The Northwoods *776 Riders carried out the essentially managerial decisions of the Snowmobile Trails Association, doing the physical work[10] that makes it possible to maintain and expand Wisconsin's system of snowmobile trails. It is the relative functions of the organizations and their relation to the collective task of maintaining that system that makes them "occupiers" under the statute, not an exact determination of what work the volunteers did or how hard they worked.
¶ 16. Because we conclude that the Snowmobile Trails Association and the Northwoods Riders are "occupants" for the purposes of the recreational immunity statute, WIS. STAT. § 895.52, we affirm the judgment.
By the Court.  Judgment affirmed.
*777 
NOTES
[] Petition to review denied 7-28-2005.
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] All county riding clubs are members of the Snowmobile Trails Association.
[3] A malicious act or failure is one that results from "hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury were intended." Ervin v. City of Kenosha, 159 Wis. 2d 464, 483, 464 N.W.2d 654 (1991) (adopting the definition of malicious found in WIS JICIVIL 1707 (1990)). Leu does not argue that Becker's actions were malicious nor do we perceive any facts or inferences to support a claim of malice.
[4] The relevant portion of the statute said "[a]n owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, ... or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on the premises to persons entering for such purposes." WIS. STAT. § 29.68(1). The legislature repealed § 29.68 on May 15, 1984, replacing it, before Smith was decided, with the current recreational immunity statute, WIS. STAT. § 895.52. Smith declined to apply § 895.52 retroactively. Smith v. Sno Eagles Snowmobile Club, 823 F.2d 1193, 1195 (7th Cir. 1987).
[5] Hall did not specifically apply that definition to snowmobile clubs. Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988).
[6] This last difference is particularly significant because we construe WIS. STAT. § 895.52 liberally, at the direction of the legislature. See, e.g., Verdoljak v. Mosinee Paper Corp., 200 Wis. 2d 624, 638, 547 N.W.2d 602 (1996).
[7] The court also noted, in what it claimed was in contrast to Smith, that it believed "the relationship of an entity to the premises, not the length and stability of its presence, should primarily determine whether" an entity is an occupier. Ward v. Arizona, 890 P.2d 1144, 1148 (Az. 1995).
[8] We have found a snowmobile club not to be an occupant of property, but only under very different facts. Mooney v. Royal Ins. Co., 164 Wis. 2d 516, 520-22, 476 N.W.2d 287 (Ct. App. 1991). In Mooney, a snowmobile club was given permission by a town to hold a fund-raising race on one of the town's lakes. The club held the race, cleaned up, and left. Five days later, a snowmobiler was injured when he hit a large mound of frozen snow left behind after the race. We said that the club was not immune from liability for negligence because while an occupier need not be in actual possession or exclusive control of the property, he cannot totally abandon the premises. Id. at 522.
[9] These material facts are unchallenged. Leu claims there is no evidence the Snowmobile Trails Association actually maintained the trials. She may be correct, but the question is whether that fact is material. Given that snowmobile trails cannot be constructed or maintained without both labor and expensive machinery, the Snowmobile Trail Association's managerial decision to split functions between organizations should not deprive one or both of an immunity they would have had if that decision had not been made.
[10] This fact is also essentially unchallenged. Leu suggests that the trail that her husband died on might have been a logging road at one time. But unless occupancy depends upon creating new access by constructing a new trail, rather than on maintaining access by grooming an existing trail, that fact is not material.