*436 REBECCA G. BRADLEY, J.
¶ 132. (dissenting). I would affirm the court of appeals[1] and hold that Sundog[2] is immune from liability under Wisconsin's recreational immunity statute, Wis. Stat. § 895.52(2).[3] Sundog meets the statutory requirements to obtain recreational immunity because: (1) it falls within the definition of "owner," which includes "a person. . . that. . . occupies property," and (2) Patti Roberts engaged in a recreational activity on the property occupied by Sundog. See Wis. Stat. § 895.52(l)(d)l., (2)(b). By actually using the land during a charity event, Sundog meets the ordinary and accepted meaning of "occupies." This conclusion comports with the legislative purpose of recreational immunity and would not, as the majority fears, result in the limitless application of the recreational immunity statute. As a result, I respectfully dissent from the majority opinion because a plain reading of the statute demonstrates Sundog is entitled to recreational immunity.[4]
*437 ¶ 133. Subject to exceptions not applicable in this case, property "owners," as defined by Wis. Stat. § 895.52(l)(d)l.-2., are immune from liability for injuries sustained as a result of recreational activities that occur on their property. See Wis. Stat. § 895.52(2). The parties dispute whether Sundog meets the statutory definition of an "owner" to qualify it for recreational immunity. Applicable here is § 895.52(l)(d)l., which defines an owner as: "Aperson, including a governmental body or nonprofit organization, that owns, leases or *438 occupies property" (emphasis added).[5] There is no assertion that Sundog owns legal title to the property or that it leased the property in question. The only way that Sundog meets the statutory definition of "owner" is if Sundog "occupies [the] property." See § 895.52(l)(d)l.
¶ 134. Unlike "owner," the word "occupies" is not defined in the recreational immunity statute. However, the plain, ordinary, and accepted meaning of "occupies" can be readily determined by reference to the dictionary definition of an "occupant." An occupant is "[o]ne that resides in or uses a physical space." Occupant, The American Heritage Dictionary of the English Language 1218 (5th ed. 2015). This definition indicates that a person who occupies property is one who has actual use of the property.
¶ 135. Here, Sundog donated tethered, hot air balloon rides at a charity event sponsored by Green Valley Enterprises. To provide this recreational ballooning activity, Sundog set up the tethered hot air balloon on property legally owned by Beaver Dam Conservationists, LLC. It used both ropes and flags to designate an area surrounding the hot air balloon. These facts show that Sundog actually used the property to provide a recreational activity, ballooning, (specifically mentioned by Wis. Stat. § 895.52(l)(g)) when Patti Roberts sustained injuries. This actual use of the property meets the plain, common, and ordinary meaning of" [a] person . . . that . . . occupies property." See Wis. Stat. § 895.52(l)(d)l. Therefore, Sundog *439 meets the definition of a statutory owner as one who occupied the property and therefore is entitled to recreational immunity.
¶ 136. This conclusion is consistent with the legislative purpose of the recreational immunity statute: to "limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit." 1983 Wis. Act 418, § 1. This statement of legislative purpose is often summarized as "encourag[ing] landowners to open up their land for recreational activity." Ervin v. City of Kenosha, 159 Wis. 2d 464, 477, 464 N.W.2d 654 (1991) (emphasis added); see majority op., ¶ 28. The purpose of the recreational immunity statute, however, is much broader as evidenced by the legislature's decision to include in its definition of "owner" both lessees and occupiers of property. In interpreting the meaning of "property" defined by Wis. Stat. § 895.52(l)(f), we reached a similar conclusion: " [I]t is abundantly clear from the language of the statute and the statement of legislative intent that the purpose of the statute is broader, and recreational immunity is not in fact limited only to landowners." Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶ 22, 248 Wis. 2d 567, 636 N.W.2d 727.
¶ 137. This broad legislative purpose, evidenced by the legislative policy statement read in conjunction with the statutory text refutes the majority's claim that "[immunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public." See majority op., ¶ 37.
¶ 138. Here, Sundog provided the recreational ballooning activity free of cost to members of the *440 public who attended the charity event. Depriving Sundog of immunity because Green Valley and the Conservationists, rather than Sundog, "opened" the land to the public, creates a distinction between Sundog on the one hand, and Green Valley and the Conservationists on the other, that is not only unsupported by the broad legislative purpose of the recreational immunity statute but wholly absent from the statutory definition of the term "owner." Furthermore, the creation of this unsupported distinction ignores the fact that the Conservationists allowed Green Valley to hold an event that included a recreational ballooning activity provided by Sundog. Sun-dog's participation in the charity event undoubtedly encouraged the public to attend the event and, in some instances, take part in the recreational ballooning activity. Declining to recognize Sundog's statutory immunity will discourage organizations such as Sun-dog from donating recreational activities at charity events for fear of incurring liability, which, in turn, will reduce sponsorship of such events by organizations because they will have less recreational options — if any at all — to draw attendance. Ultimately, public access to private land will be reduced. This runs counter to the legislative purpose of the recreational immunity statute.
¶ 139. As further support for its decision to treat Sundog differently than Green Valley and the Conservationists, the majority indicates that prior case law has not granted immunity to a "third-party" organization such as Sundog. See majority op., ¶ 33. Simply because the appellate courts apparently have not previously been presented with a similar fact pattern does not eliminate immunity created by the statute. Sundog *441 satisfies the requirements of the statute and therefore is entitled to the immunity it provides.
¶ 140. Further, the majority does not explain how its conclusion — that an organization such as Sundog that did not open land to the public cannot "occupy" the property — accounts for the plain, ordinary, and accepted meaning of the term "occupies." See majority op., ¶ 41. Although the majority opinion references the "requiring a degree of permanence, as opposed to mere use" definition of "occupies" utilized by the court of appeals in Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 354, 575 N.W.2d 734 (Ct. App. 1998), majority op., f 34, it fails to apply the Doane definition to the facts of this case and fails to address the fact that the court of appeals has used differing definitions of "occupies," as explained below, when determining whether an individual or group meets the definition of "owner" in Wis. Stat. § 895.52(l)(d)l.
¶ 141. On several occasions, the court of appeals has addressed the meaning of "occupies" in the definition of "owner" under Wis. Stat. § 895.52(l)(d)l. and concluded that "occupies" requires actual use of the property. In Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 490-91, 431 N.W.2d 696 (Ct. App. 1988), the court of appeals adopted a definition of "occupies" from a case decided by the Seventh Circuit Court of Appeals:
[O]ccupant include[s] persons who, while not owners or tenants, have the actual use of land.... While "occupant" includes [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted *442 to encompass a resident of land who is more transient than either a lessee or an owner.
Id. at 491 (citing Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1197 (7th Cir. 1987))(quoting Smith v. Sno Eagles Snowmobile Club, Inc., 625 F. Supp. 1579, 1582 (E.D. Wis. 1986)).[6] Subsequent cases have cited Hall and relied on its definition of "occupies property." See Leu v. Prince Cty. Snowmobile Trails Ass'n, Inc., 2005 WI App 81, ¶¶ 11-13, 280 Wis. 2d 765, 695 N.W.2d 889; Mooney v. Royal Ins. Co. of Am., 164 Wis. 2d 516, 521-22, 476 N.W.2d 287 (Ct. App. 1991); Lee v. Elk Rod & Gun Club, Inc., 164 Wis. 2d 103, 107, 473 N.W.2d 581 (Ct. App. 1991).
¶ 142. However, in Doane, the court of appeals determined that "occupies property" within the definition of "owner" under Wis. Stat. § 895.52(l)(d)l. requires some degree of permanence in addition to actual use of the property. Doane, 216 Wis. 2d at 351. The court of appeals recently applied the some degree of permanence definition of "occupies" from Doane in WEA Property & Cas. Ins. Co., 2013 WI App 139, ¶ 21, 352 Wis. 2d 73, 841 N.W.2d 290.
¶ 143. The majority, however, fails to apply the some degree of permanence definition of Doane to the facts of this case. Instead, it compares this case to Doane by focusing on the purpose underlying the recreational immunity statute — to open up land for recreation. Majority op., ¶ 35. Doane involved the owner of an ice shanty on a lake already open for public *443 recreational purposes, who was not present at the invitation of the titled owner or lessee but who was simply using public waters as any member of the public could. See Doane, 216 Wis. 2d at 348, 353-54. An entirely different situation is presented here, where Sundog, the owner of a hot air balloon, was invited to occupy land for purposes of attracting members of the public to a charity event by offering the recreational activity of ballooning. The majority likens Sundog to the owner of the ice shanty because the Conservationists' property, like the lake in Doane, was already open for public recreational purposes; therefore, the majority reasons, recognizing immunity " 'would not further the policy which underlies the statute, i.e., of opening as much property as possible for recreational use ....'" Majority op., ¶ 35 (citing Doane, 216 Wis. 2d at 355). The majority's analogy fails because in Hall, 146 Wis. 2d at 487, the Turtle Lake Lions Club was immunized from liability for an injury occurring on the grounds of a public park and in Lee, 164 Wis. 2d at 107, the Elk Rod & Gun Club was considered a "landowner" under the recreational immunity statute as an occupant of a city park. The recreational immunity statute simply does not restrict immunity to occupiers of land that is not already open to the public.
¶ 144. The definition of "occupies" adopted in Hall comports with the plain, ordinary, and accepted meaning of the word as well as the legislative purpose of the recreational immunity statute. There is no temporal requirement embedded in the definition of occupy. The broad definition of "owner," which expressly encompasses a person that "occupies" property, is not limited to those who "host" or "organize" an event on the land. The recreational immunity statute *444 immunizes a person that "owns, leases or occupies property"; the statute does not restrict immunity to only those occupiers who are event "hosts" or "organizers," a limitation the majority invents in this case. In an apparent attempt to further narrow the scope of recreational immunity beyond the words of the statute, the majority reads into the statute language that simply is not present. Whether recreational immunity should be further limited is a policy judgment for the legislature and not this court to make.
¶ 145. Furthermore, I am not persuaded by the majority's conclusion that granting recreational immunity to Sundog would result in the limitless application of Wis. Stat. § 895.52(2). See majority op., ¶¶ 38-40. A plain meaning interpretation of "occupies property," requires actual use of the land. For example, in Mooney, 164 Wis. 2d at 522-23, the court of appeals held that a snowmobile club that had left the property following the conclusion of an event did not meet the definition of an occupier and could not receive recreational immunity. The same would be true of a hot air balloon manufacturer because the manufacturer is not located on the property at the event using the land, and therefore is not an "occupier." It should go without saying that the recreational immunity statute does not extend to the manufacturer of Sundog's balloon yet the majority uses this example to create an unnecessary limiting principle by stirring unfounded fears that otherwise "there will be no stopping point to recreational immunity" despite statutory language that plainly restricts immunity to those who own, lease or occupy property. See majority op., ¶ 39. Of course, the manufacturer of Sundog's balloon fits none of these categories. The legislature created a stopping point. It is not this *445 court's role to second-guess the legislature's policy judgments by moving the mark.
¶ 146. Finally, the majority relies on Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), to declare a new limiting principle for recreational immunity. Majority op., ¶¶ 38-39. In Lin-ville, the court declined to extend immunity to city paramedics providing services for injuries sustained during a recreational activity, noting that such services could take place days or weeks after the event and away from the site of the recreational activity. Linville, 184 Wis. 2d at 711, 720. Specifically, relying on Linville, the majority asserts that Sundog has "no connection to the land" and therefore should not qualify for recreational immunity. Majority op., ¶ 39. The use of Linville and this particular limiting principle is perplexing in two respects. First, the majority's reliance on Linville implicitly addresses the Roberts's alternative argument — that an injury must arise from a condition associated with the land— despite the majority opinion's pronouncement that it does not decide this issue. See majority op., ¶ 4 n.4. Second, not only was Sundog present on the land during the charity event, but its hot air balloon was literally connected to the land by ropes that tethered the hot air balloon to two trees (and a truck) on the property. Unlike the paramedics in Linville, Sundog was the entity actually providing the recreational activity, notably one that is specifically mentioned as a "recreational activity" in the recreational immunity statute. See 895.52(l)(g).
¶ 147. I would affirm the court of appeals and hold that Sundog is entitled to recreational immunity under Wis. Stat. § 895.52.
*446 ¶ 148. For the foregoing reasons, I respectfully dissent.
¶ 149. I am authorized to state that Justice DAVID T. PROSSER joins this dissent except for footnote 4.

 Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op. (Wis. Ct. App. March 26, 2015).

 Sundog refers to the Respondents: Sundog Ballooning, LLC, Kerry Hanson, Jodi Hanson, and T.H.E. Insurance Company. See majority op., ¶ 2.

 Whether Sundog met the statutory definition of an "owner" in Wis. Stat. § 895.52(l)(d)l. was not an issue before the court of appeals. In our order granting the petition for review, this court ordered the parties to brief and address that issue.

 Because Sundog is entitled to recreational immunity, I would not reach the issue of whether the waiver of liability violates public policy.
Similarly, because I conclude that recreational immunity applies to Sundog, it is unnecessary to decide whether Sun-dog qualifies for recreational immunity based on its argument that the hot air balloon constitutes "property" under Wis. Stat. § 895.52(l)(f). I disagree, however, with the majority's *437 conclusion that because the hot air balloon was not "constructed on real property" it fails to meet the definition of property in the statute. See majority op., ¶ 45. Although the majority's structure analysis could be read to require that the structure be built or put together on site, the majority suggests that for purposes of recreational immunity, a structure must be permanently affixed to real property. This requirement is not found in the text of the recreational immunity statute, but the majority imposes the requirement based on Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶ 17, 248 Wis. 2d 567, 636 N.W.2d 727. Peterson held that a tree stand used for hunting constituted a structure within the meaning of Wis. Stat. § 895.52(l)(f). Id., ¶ 4. The majority asserts that unlike Sundog's hot air balloon, "the tree stand was permanent and built or constructed on the real property." Majority op., ¶ 45. This differentiation between a hot air balloon and a tree stand, however, should not determine whether Sundog's hot air balloon meets the common and ordinary meaning of the word "structure."
Based on the statutory language alone, Sundog's alternative argument for recreational immunity fails because Patti Roberts did not ever enter or get on the hot air balloon, which is required by the recreational immunity statute. See Wis. Stat. § 895.52(2)(a) (making recreational immunity available to owners when a person "enters the owner's property"); see also Wis. Stat. § 895.52(2)(b) (making recreational immunity available to owners when "a person engag[es] in a recreational activity on the owner's property") (emphases added).

 It is not disputed that Sundog Ballooning, LLC qualifies as "a person" in the definition of "owner" found in Wis. Stat. § 895.52(l)(d)l.

 Although Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193 (7th Cir. 1987), applied Wis. Stat. § 29.68, the precursor to Wis. Stat. § 895.52, both statutes grant recreational immunity to owners, lessees, and occupants. Compare Wis. Stat. § 29.68(1) (1981-82) with Wis. Stat. § 895.52(l)(d)l. and (2) (2013-14).