Richard A. **MILAN,** Plaintiff,

v.

Jack R. **DUCKWORTH; and Barry Nothstien,** Defendants.

Civ. No. S 88–510.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 2, 1989.

Richard A. Milan, Michigan City, Ind., pro se.

Kirk A. Knoll, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On August 18, 1988, plaintiff *pro se,* Richard A. Milan, filed a complaint purport-

ing to state a claim under 42 U.S.C. § 1983, and invoking this court's jurisdiction under Title 28 U.S.C. §§ 1331, 1343(3) and (4). On July 5, 1989, the defendants filed a motion for summary judgment and fully complied with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure (Fed.R.Civ.P. 56); *accord Arkwright–Boston Mfg. Mutual Ins. Co. v. Wausau Paper Mills Co.,* 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984).

Recently the Supreme Court of the United States took the opportunity to address Rule 56, Fed.R.Civ.P. In two cases decided on the same day, the Court has expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

■ After *Celotex* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 106 S.Ct. at 2554. *See also Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate

'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* Furthermore, in *Anderson,* the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. 106 S.Ct. at 2510. In addition, the Court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 2512–2513. For recent academic insight into *Celotex* and *Anderson,* see Childress, *A New Era For Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183–194 (1987). At page 194 thereof, the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgments, one in which the old presumptions are giving way to a policy of balancing and efficiency and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp., supra.* A recent object lesson applying these ideas is found in *Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988). *See also Jamison–Bey v. Thieret,* 867 F.2d 1046 (7th Cir.1989). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

■ The complaint in this case read liberally under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), relates to an incident on July 10, 1988, at the Indiana State Prison in Michigan City, Indiana, involving an attempted visit between the plaintiff, an inmate in that institution and one Judy Ballard. It goes without saying that this court must consider the basic factual allegations in the complaint as true and reads the complaint and the allegations in the light favorable to the plaintiff.

The plaintiff is attempting to bottom his claims on both the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the Constitution of the United States. It is basic, under contemporary constitutional doctrine, that the plaintiff establish the denial of a liberty interest without due process of law. The Supreme Court of the United States outlined the basis of establishing such a liberty interest in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and most recently explicated the same in *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

In the most recent *Thompson* case, the high court held that inmates do not generally possess a liberty interest in visitation privileges, but there, like in *Hewitt,* state law and regulations may create an enforceable liberty interest. An enforceable liberty interest is created when the state uses "explicitly mandatory language" in connection with the establishment of "specific substantive predicates" to limit discretion. Such forces a conclusion that the state has created a liberty interest. *See Thompson,* at 109 S.Ct. 1910; *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871.

The result in *Thompson* under this analysis was that Thompson had not established a liberty interest in visitation privileges. This court must now apply the composite conceptual reasoning of *Hewitt* and *Thompson* to determine in this case whether there was a constitutional violation here. The court has examined Administrative Procedure Number 02–00–104 and attaches the same as Appendix "A" hereto. The same is incorporated herein by reference. Section 11 thereof establishes that visitation privileges may be denied and places no specific criteria on when such privileges may be denied. It is the view of this court that the plaintiff is hard-pressed under the foregoing authorities to establish a protectable liberty interest in those procedures. It is correct that the aforesaid administrative procedure states that the denial of visitation privileges shall be given to a prisoner in writing. However, the question becomes a close one when that procedure was not followed. It has been admitted by the affidavit of Barry Nothstine that denial was not given in writing. One of the worrysome questions here is whether the failure by the prison authorities, defendants in this case, to follow their own procedures in providing the denial in writing in some way might constitute a violation of procedural due process. If Nothstine's affidavit is true, the denial was justifiably reasonable.

The plaintiff does not argue with or deny the fact that the defendants had the discretionary authority to deny his visitation privileges following his escape attempt. In fact, the plaintiff does not argue that the visitation privileges were unjustifiably denied without good cause. Rather, the plaintiff focuses on the admitted failure of the prison authorities, in this case Mr. Nothstine, to notify him in writing of the denial of his visit with Judy Ballard on July 10, 1988.

In *Hewitt, supra,* the Supreme Court stated:

> Respondent seems to suggest that the mere fact that Pennsylvania has created a careful procedure structure to regulate the use of administrative segregation indicates the existence of a protected liberty interest. We cannot agree. The creation of procedural guidelines to channel the decisionmaking of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause.

This very narrow procedural reed is too fragile to support a substantive constitutional claim. Additionally, the motion for summary judgment filed by the plaintiff on September 1, 1989, should be denied. The reliance on *Smith v. Stoner,* 594 F.Supp. 1091 (N.D.Ind.1984), a case well known to this court is misplaced. *Smith* does not compel the granting of summary judgment for the plaintiff or deny summary judgment to the defendants.

Therefore, summary judgment is now GRANTED in favor of the defendants and against the plaintiff for failure to establish the violation of a substantive constitutional right.  IT IS SO ORDERED.