52 F.3d 328
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Leslie A. SMITH, Plaintiff-Appellant,
v.
Robert A. FARLEY, Charles Adkins, John Nunn, et al.,
Defendants-Appellees.
 No. 94-1046.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 4, 1995.*
Decided April 11, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Leslie Allen Smith, an inmate at the Indiana State Prison, appeals pro se from the district court's dismissal of his 42 U.S.C. Sec. 1983 action in favor of defendants, seven officers and administrators at the prison and the Indiana Department of Correction. Smith alleged that defendants improperly restricted his visitation privileges in violation of his Eighth and Fourteenth Amendment rights. The principal issue before this court is whether Indiana prison regulations governing visitation rights give state inmates an enforceable liberty interest in receiving certain visitors. We hold that they do not, and we affirm.
 
 BACKGROUND
 
 2
 In July 1993, Smith, a prisoner at the Indiana State Prison in Michigan City, Indiana, filed a complaint under 42 U.S.C. Sec. 1983, alleging that his rights under the Eighth and Fourteenth Amendments were violated by restrictions placed upon his visits with his wife and other visitors. Specifically, Smith alleged that over the previous two years, defendants improperly suspended visits from his wife without giving the Smiths notice or allowing them an opportunity to contest the suspensions.[1] In addition, Smith alleged that defendants required him, his wife, and other visitors to sit at a small card table near the front of the visiting room "where [it is] obvious to everyone that we are being singled out and punished for allegedly having done something wrong." (Complaint at 7.) Smith also alleged that defendants failed to process--or simply gave "rubber stamp denials" to--grievances he filed to redress his complaints with the visitation restrictions. Smith asserted that these visitation restrictions were more severe than those imposed on other inmates. As relief, Smith sought declaratory and monetary damages.
 
 
 3
 In August 1993, Smith served defendants with a set of requests for admissions concerning the visitation policy at the Indiana State Prison. When defendants failed to respond to Smith's request for admissions within the time allowed under Federal Rule of Civil Procedure 36, the admissions requested by Smith were deemed admitted. In November 1993, defendants moved to withdraw certain admissions, and filed answers to 20 of Smith's 21 requests for admission. Defendants argued that Smith could not show, at this early stage of the proceedings, that withdrawal of the admissions would prejudice Smith's ability to maintain an action on the merits. Defendants subsequently filed a motion to dismiss, contending that Smith's complaint failed to state a cause of action under the Eighth or Fourteenth Amendments. Smith's response contained only a conclusory assertion that he would be prejudiced if the admissions were amended or withdrawn.
 
 
 4
 In December 1993, the district court granted defendants' motion to dismiss. The court held that the Indiana regulations cited by Smith regarding prison visitation privileges established only procedural rights, not liberty interests which would entitle him to due process protection. The court also granted defendants' motion to withdraw the admissions, finding that the record disclosed no prejudice that would befall Smith if the admissions were withdrawn.
 
 DISCUSSION
 
 5
 We review de novo the district court's dismissal of Smith's complaint for failure to state a claim. Pickrel v. City of Springfield, 45 F.3d 1115, 1118 (7th Cir.1995). We accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. Dell v. Board of Educ., Township High Sch. Dist. 113, 32 F.3d 1053, 1064 (7th Cir.1994). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts to support his claim for relief. Black v. Lane, 22 F.3d 1395, 1403 (7th Cir.1994) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Because Smith pursues his claim pro se, we construe his complaint liberally. Talley v. Lane, 13 F.3d 1031, 1033 (7th Cir.1994).
 
 I. Visitation Privileges
 
 6
 Smith first contends that the district court erred in dismissing his claim that defendants violated his Fourteenth Amendment rights when they failed to give notice and a due process hearing before suspending his wife's visitation privileges.
 
 
 7
 The denial of prison access to a visitor is well within the restrictions contemplated by a prison sentence. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989). Restrictions on prison access do not independently violate the due process clause. Id. Prison officials have broad administrative and discretionary authority over the institutions that they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests. Hewitt v. Helms, 459 U.S. 460, 467 (1983).
 
 
 8
 Nevertheless, a right to receive visitors is a protected liberty interest if state law recognizes it as such. Kentucky Dep't of Corrections, at 460-61. Whether state law creates a protected liberty interest depends on whether "the regulations contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow...." Id. at 463 (quoting Hewitt v. Helms, 459 U.S. 460, 471-72 (1983)). Thus, Smith's claim that his Fourteenth Amendment rights were violated by defendants' denial of visitation hinges upon whether an Indiana statute or regulation contains mandatory language giving inmates an absolute right to visitation.
 
 
 9
 In this case, Smith suggests that Indiana regulations create a protected liberty interest which prevents prison officials from suspending visitation privileges without notice. The only Indiana statute which could give rise to a protected liberty interest in visitation rights is Section 11-11-3-9 of the Indiana Code. This statute reads in pertinent part:
 
 
 10
 A person may be prohibited from visiting a confined person ... if the department has reasonable grounds to believe that the visit would threaten the security of the facility or program or the safety of individuals. If the department prohibits or restricts visitation ... it shall notify the confined person of that prohibition or restriction. The notice must be in writing and include the reason for the action, the name of the person who made the decision, and the fact that the action may be challenged through the grievance procedure.
 
 Ind.Code Sec. 11-11-3-9.[2]
 
 11
 In Kentucky Dep't of Corrections, the Supreme Court considered whether a similar state prison regulation gave state inmates, for purposes of the Fourteenth Amendment, an enforceable liberty interest in receiving certain visitors. The regulation in that case permitted prison officers to deny visitation if they had reasonable grounds to believe that the visitor would represent a danger to the safety and security of the prison. 490 U.S. at 457. The regulation also listed nine specific situations that might justify a refusal of visitation. Id. at n. 2. Although the regulation did furnish "substantive predicates" to guide the decisionmaker, it did not contain the mandatory language that would force a particular outcome. Id.; Hewitt v. Helms, 459 U.S. 460, 471-72 (1983) (regulation only creates a liberty interest if it employs language "of an unmistakably mandatory character" which establishes substantive predicates and mandates a result upon satisfaction of those criteria). As a result, the regulation did not establish a liberty interest entitled to the protections of the due process clause.
 
 
 12
 As in Kentucky Dep't of Corrections, the prison regulation at issue in this case contains no explicit mandatory language which would narrowly circumscribe the discretion of the prison officials. According to the statute, visitation "may be prohibited," and no substantive predicates dictate the result in any individual case. The statute merely cites the same criteria identified in Kentucky Dep't of Corrections--concerns of safety, security, and order. In short, the statute is permissive in nature, and prison officials retain ample discretion to implement it. Because the regulation lacks mandatory language placing substantive limitations on the exercise of official discretion, Smith does not have a protected liberty interest in visitation.
 
 
 13
 We find support for this conclusion in Milan v. Duckworth, 756 F.Supp. 381 (N.D.Ind.1989), aff'd without opinion, 920 F.2d 935 (7th Cir.1990), where the district court analyzed the visitation policies at the Indiana State Prison in light of Kentucky Dep't of Corrections. In that case, inmate Milan filed a civil rights complaint alleging that defendants deprived him of due process by refusing to allow a visitor to see him in the prison. Contrary to the prison regulation, Milan was not informed of the visit and was not provided with a written explanation of the denial. The district court dismissed the action. In reaching this decision, the court noted that the relevant prison regulation provided only that visitation privileges "may" be denied, and that "substantive predicates" did not compel a particular outcome. Citing Kentucky Dep't of Corrections, the court held that such nonmandatory language rendered Milan "hard-pressed" to establish an enforceable liberty interest in visitation privileges. See also Griffin v. Farley, No. 3:92-cv-751RM, 1994 WL 266588, at * 4 (Ind.Code. Sec. 11-11-3-8 "creates no ... liberty interest entitled to protection under the due process clause").
 
 
 14
 In claiming that defendants violated his constitutional rights by failing to notify him of the suspensions in writing, Smith appears to base his liberty interest argument on language requiring certain procedures to be followed upon denial of visitation. Procedural guidelines do not give rise to a protected liberty interest, however, and violations of a state law which does not create such a liberty interest are not actionable under the due process clause. See Smith v. Shettle, 946 F.2d 1250, 1254 (7th Cir.1991). A violation of mandatory procedures may give rise to a state law claim, but it will not support a constitutional challenge under the due process clause. See Milan, 756 F.Supp. at 383 (holding that prison's failure to inform plaintiff in writing of denial of visitation privileges did not give rise to a substantive constitutional claim).
 
 
 15
 Furthermore, Smith's complaint was inadequate to state a claim of denial of equal protection. Smith alleged that defendants have "singl[ed]" him out for "special punishment" and imposed visitation restrictions "that punish[ ] me beyond what they punish any other offender for at this institution." (Complaint, at 6-7.) Smith alleged no facts, however, to suggest that he was discriminated against because of membership in a suspect class, or that any difference in treatment was wholly arbitrary and irrational.
 
 
 16
 Finally, prisoner grievances involving visitation privileges are generally not weighty enough to implicate the Eighth Amendment's ban on cruel and unusual punishment. See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (noting that prison's denial of "minimal civilized measure of life's necessities" is serious deprivation) (quoting Rhodes v. Chapman, 452 U.S. 337 (1981)).
 
 II. Withdrawing of Admissions
 
 17
 Smith also argues that the district court erred in allowing defendants to withdraw their admissions regarding the prison's visitation policies.
 
 
 18
 Under Federal Rule of Civil Procedure 36(a), if a party fails to respond to a request for admissions within 30 days, the requested items are deemed admitted. Any matter thus admitted is conclusively established unless the court on motion allows the admission to be withdrawn or amended. Fed.R.Civ.P. 36(b). Under Rule 36(b), a district court:
 
 
 19
 may permit withdrawal or amendment [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.
 
 
 20
 In other words, before an admission may be withdrawn, two requirements must be met: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must prove that it would not be prejudiced by the withdrawal. Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995). We review a district court's decision to permit the withdrawal of an admission for abuse of discretion. American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1119 (5th Cir.1991).
 
 
 21
 In their motion to withdraw admissions, defendants asserted that withdrawal of the admissions would serve the interest of justice because they had numerous meritorious defenses to the action. Defendants also claimed, and the district court agreed, that Smith could not show at this early stage of the proceedings that he would be prejudiced by a withdrawal of the deemed admissions. Smith's appellate brief does not suggest how the withdrawal of the admissions prejudiced his case. Under these circumstances, we cannot say that the district court abused its discretion in allowing the admissions to be withdrawn under Rule 36.
 
 CONCLUSION
 
 22
 Because the Indiana code provisions governing inmate visitation do not create a protected liberty interest in receiving visitors, we AFFIRM the judgment of the district court dismissing Smith's complaint.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant Smith has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Smith's complaint does not describe the circumstances surrounding these suspensions or identify the dates when the suspensions were in effect. According to exhibits contained in the appellate record, however, the visitation privileges of Smith's wife were suspended for three months on July 18, 1988 after she had engaged in sexual contact with Smith during a visit to the prison purportedly to see another inmate. (R. 10, Ex. to Memorandum in Support of 48 U.S.C. Sec. 1983 [sic] Civil Rights Complaint.) Ms. Smith's visiting privileges were reinstated in mid-September 1988. Id. On February 17, 1993, Ms. Smith's visiting privileges were restricted for two months as a result of certain racially derogatory comments she had made during a conversation with her husband in the visiting room. Id
 
 
 [2]
 Similar language also appears in the "Offender Visitation" portion of the Indiana State Prison's Operational Procedures for Policy, No. 02-00-104 (November 10, 1990)