**ARKWRIGHT–BOSTON MANUFACTUR-ERS MUTUAL INSURANCE COMPA-NY, Plaintiff-Appellee, Cross-Appellant,**

v.

**WAUSAU PAPER MILLS COMPANY, Defendant-Appellant, Cross-Appellee.**

Nos. 86–1747, 86–1822.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1986.

Decided May 5, 1987.

Carl L. Ricciardi, Samster, Aiken & Maw-icke, S.C., Wausau, Wis., for defendant-appellant, cross-appellee.

Stephen A. Krupp, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiff-appellee, cross-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

The defendant, Wausau Paper Mills Company ("Wausau Mills"), purchased an all-risk property insurance policy from the plaintiff, Arkwright-Boston Manufacturers Mutual Insurance Company ("Arkwright"). Wausau Mills subsequently attempted to recover under that policy the costs of repairing damage to a reactor it owned and operated. Arkwright denied the claim, maintaining that the damage was not an insured risk under the terms of the policy. The district court entered summary judgment in favor of Arkwright.

I.

Wausau Mills manufactures and sells paper. It purchased an all-risk insurance policy from Arkwright covering the period from January 1, 1983 to January 1, 1986. The policy insured Wausau Mills "against all risks of direct physical loss or damage, except as hereinafter excluded, to the property described hereinafter...." Property Damage Policy, Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment, Exhibit 5, at 5915. The policy also contained the following provision enumerating certain exclusions from coverage:

C. EXCLUSIONS

....

Group B This policy does not insure against:

....

4. Deterioration, depletion, inherent vice or latent defect, rust or corrosion, mold, wet or dry rot, erosion, or wear and tear unless physical damage not otherwise excluded by this Policy results, in which event, this Policy shall cover only such resulting damage[.]

*Id.* at 5919.

Among the property covered by the policy was the Copeland Recovery Reactor (the "reactor") located at Wausau Mills' paper mill in Brokaw, Wisconsin. The reactor is a three-story, thirty-eight-foot tall vessel in which certain by-products from the paper mill are burned in order to recover chemicals for reuse in the papermaking process. The walls of the reactor are composed of two layers of brick covered by an exterior steel shell whose thickness varies from $\frac{1}{2}$ inch to $\frac{3}{8}$ inch. The normal operation of the reactor produces several chemicals, including sulfur dioxide ($SO_2$), sulfur trioxide ($SO_3$) and water ($H_2O$). If the temperature of the interior surface of the steel shell drops below the dew point of sulfuric acid, $H_2O$ and $SO_3$ condense on the steel shell as $H_2SO_4$—sulfuric acid. Hot sulfuric acid is highly corrosive to steel; it can cause thin-

* Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ning and pitting (i.e., the creation of holes) in the steel.

The reactor was designed and installed in 1965 and 1966. Damage to the reactor due to the condensation of sulfuric acid first occurred in 1970. In that year, many holes, as well as general thinning, were discovered in the steel shell. As a result, the reactor was shut down and all but the foundation was replaced. A lining was placed between the brick and the steel shell, in part to protect the shell from corrosion.

Corrosion did not again interfere with the operation of the reactor until late 1978, when eight to ten holes were discovered in the steel shell. Again, corrosion due to the condensation of sulfuric acid was determined to be the cause of the damage. Representatives from the company that built the steel shell and the company that supplied the brick lining advised Wausau Mills that the reactor would have to be replaced "in the very near future." Wausau Mills decided not to replace the reactor or the steel shell at that time. Instead, it placed half-inch thick carbon-steel patches over existing holes and thin spots, installed thermocouples which monitored the shell temperature and insulated the exterior of the reactor.

In October 1982, Wausau Mills installed a new sulfur scrubber system to remove sulfur dioxide ($SO_2$) from the gases emitted from the reactor. The addition of the scrubber system lowered the operating temperature of the reactor and the reactor shell. The lower temperatures resulted in poor chemical recovery and also created the danger of future corrosion. The temperatures began to rise in December 1982 but remained below normal until May 1983. In July 1983, Wausau Mills discovered and patched two small holes in the steel shell. In September 1983, numerous additional holes were discovered. The parties agree that the holes were caused by sulfuric acid forming in the reactor and condensing on the steel shell.

Wausau Mills attempted to recover the cost of repairing the reactor from Ark-

wright under its all-risk policy. Arkwright denied the claim and filed suit requesting a declaratory judgment that the September 1983 loss was not covered by the insurance policy. Arkwright later moved for summary judgment on the grounds that the loss was not fortuitous and that the loss fell within the policy provision excluding damage due to "corrosion." The district court adopted the magistrate's report and recommendation that found that, although the loss was fortuitous, the loss came under the corrosion exclusion. Thus, the court granted summary judgment in favor of Arkwright. Wausau Mills appeals.

## II.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, — U.S. — , 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). As the Supreme Court has recently stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, — U.S. — , 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

We must determine whether an issue of fact remains as to whether the September 1983 loss fell within the corrosion exclusion.[1] Under Wisconsin law, which governs in this diversity case, the construction of language in an insurance policy is generally a matter of law and is controlled by the same rules of construction applied to all contracts. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (1984); *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis.2d 555, 562, 278 N.W.2d 857, 860 (1979). The objective in construing an insurance policy is to

---

**1.** The district court's finding that the loss was fortuitous is not before us on appeal.

ascertain and carry out the true intention of the parties. *Kremers-Urban,* 119 Wis.2d at 735, 351 N.W.2d at 163. The language of the policy is construed according to "the common and ordinary meaning it would have in the mind of a lay person." *Id.* "[T]he test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean." *Id.* Words or phrases in an insurance policy that are reasonably or fairly susceptible to more than one construction are considered to be ambiguous and are construed strictly against the insurance company and in favor of coverage. *Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414, 417 (1975). Where the terms of a policy are not ambiguous, the court will simply apply the policy according to its terms without engaging in construction; the court will not, for example, construe the policy strictly against the insurer in the absence of an ambiguity. *Lawver v. Boling,* 71 Wis.2d 408, 421–22, 238 N.W.2d 514, 521 (1976). "Moreover, an otherwise unambiguous provision is not rendered ambiguous simply because it is difficult to apply to the facts of a particular case." *Id.* at 422, 238 N.W.2d at 521.

The parties agree that the steel shell was damaged by the condensation of sulfuric acid which caused the formation of holes. Wausau Mills claims that "the acid attack which resulted in the September, 1983 damage to the Copeland Recovery Reactor was not 'corrosion' *as that term is commonly used.*" Appellant's Brief at 10 (emphasis added). Wausau Mills argues that the ordinary meaning of corrosion is the "gradual wearing away or alteration of metal," *id.* at 11, that inevitably occurs in time to all metal, rather than the sudden "acid attack" that occurred here. Wausau Mills argues in the alternative that the word "corrosion" is ambiguous, and that its definition of corrosion is reasonable and must be applied because it is the most favorable to Wausau Mills, the insured.

In determining the common meaning of a word, a court may look to the definition of the word given in a recognized dictionary. *Kremers-Urban,* 119 Wis.2d at 731–32, 351 N.W.2d at 161–62; *Lawver,* 71 Wis.2d at 414, 238 N.W.2d at 517. *Webster's Third New International Dictionary* (1981) defines "corrosion" and its verb "corrode" as follows:

1: the action, process, or effect of corroding: as a: the action or process of corrosive chemical change not necessarily accompanied by loss of form or compactness; *typically:* a gradual wearing away or alteration by a chemical or electrochemical oxidizing process (as in the atmospheric rusting of iron) b: a gradual weakening, loss, or destruction (as of spirit or force) <the corrosion of faith and the corruption of moral standards— *Times Lit. Supp.*> c: erosion of land or rock: *specif:* the removal of soil or rock by the solvent or chemical action of running water....

vt 1: to eat away by degrees as if by gnawing <*corroded* by consumption and indigence>: wear away or diminish by gradually separating or destroying small particles or converting into an easily disintegrated substance; *esp:* to eat away or diminish by acid or alkali reaction or by chemical alteration <the metal was *corroded* beyond repair by exposure> <the caustic substance *corroded* the material so that it fell apart in the hands> 2 *obs:* to eat or gnaw away 3: to weaken or destroy (as spirit, strength, or force) by a gradual process of impairment <manners and miserliness that corrode the human spirit—Bernard DeVoto>.

We agree with the magistrate that the damage to the reactor at issue here was "corrosion" within the ordinary meaning of the word and as that word is defined in *Webster's.* As the magistrate noted, Wausau Mills offered no persuasive argument to the contrary:

Steel of thickness ranging from three-eighths to one-half inch was eaten away or diminished by the chemical action of the sulfuric acid to the point that holes appeared. No other term has been suggested or comes to mind to describe what occurred. Indeed, the record reveals that it is the term which defendant's own representatives have commonly em-

ployed in dealing with the present damage and with the previous instances of similar damage.

*Arkwright-Boston Manufacturers Mutual Ins. Co. v. Wausau Paper Mills Co.,* No. 84–C–727–C, at 26 (W.D.Wis. Mar. 7, 1986) (adopted by Apr. 10, 1986 order of district court).

Even if we were to agree with Wausau Mills that the word "corrosion" is ambiguous, we do not believe that its proposed definition is reasonable under the circumstances. Wausau Mills correctly argues that if we find that an ambiguity exists, we must apply the *noscitur a sociis* rule of construction. That rule requires that an ambiguous word be interpreted by reference to the meaning of words associated with it. In addition, if an ambiguity exists, we must resolve that ambiguity in favor of the insured. Even after applying these rules of construction, however, we find that the speed at which the corrosion took place here is not relevant to whether it falls under the corrosion exclusion. Wausau Mills' position that the corrosion exclusion covers only the inevitable and "expected end-of-life failure to all metal" is not a reasonable interpretation of the policy. No such limitation is apparent from the face of the policy. The terms accompanying "corrosion" in the exclusion are physical conditions that can cause damage at any time during the life of the property (i.e., deterioration, depletion, rust, mold, wet or dry rot, erosion or wear and tear), or, alternatively, that existed in the property from the date of manufacture (i.e., inherent vice or latent defect). The function of the reactor was to capture chemicals for use in the papermaking process. The manner in which the reactor was operated to achieve this purpose undoubtedly would affect the amount of damage to the reactor, including the amount of corrosion and other excluded damage. Wausau Mills' interpretation would narrow the exclusion almost to the point of destroying it; any use by Wausau Mills of its property that would increase the risk or hasten the rate of damage by one of the causes listed in the exclusion would remove the resultant damage from the exclusion.

■ The reasonable interpretation of the corrosion exclusion that most favors coverage is that the exclusion was limited to corrosion caused by use of any method of operating the reactor that Wausau Mills deliberately chose. This interpretation, however, proves to be unhelpful to Wausau Mills in this case. Here, Wausau Mills decided to install a sulfur dioxide scrubber system to control emissions from the reactor, which caused a lowering of the temperature in the reactor that was conducive to corrosion. Wausau Mills then continued to operate the reactor at the lowered temperature for over half a year. We find that any corrosion that resulted from Wausau Mills' decision to operate the reactor with the scrubber system is within the scope of the corrosion exclusion in the policy.

■ Finally, Wausau Mills argues that the negligence of its employees was a nonexcluded cause of the September 1983 damage to the reactor, and, therefore, the loss is covered. Wausau Mills is correct that where both an insured risk and an excluded risk are substantial factors in causing a loss, the loss is covered. As the Supreme Court of Wisconsin has stated: "Where a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Kraemer Bros.,* 89 Wis.2d at 570, 278 N.W.2d at 864; *cf.* 5 J. Appleman, *Insurance Law and Practice* ¶ 3083, at 311 (1970) ("[R]ecovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk."). But here the "negligence" alleged by Wausau Mills on the part of its employees includes only the company's own decisions that resulted in the operation of the reactor at temperatures conducive to corrosion. Wausau Mills alleges no specific negligent acts by individual employees contrary to the company's policies concerning how to operate the reac-

tor. As discussed above, the corrosion that caused the 1983 damage is precisely the type of corrosion the policy was intended to exclude, and was not a distinct, significant factor that resulted in the damage.

## III.

On the same day the district court entered summary judgment in favor of Arkwright, the court also denied Arkwright's motion for leave to amend its reply to the defendant's amended counterclaim. Arkwright sought to include a claim for attorney's fees. Although Wausau Mills' defenses and counterclaims do not seem frivolous to this court and attorney's fees therefore do not seem warranted, we decline to affirm the district court's denial of leave to amend. The district court's order denying Arkwright's motion stated only: "Plaintiff's motion to amend its reply to defendant's amended counterclaim is denied as moot." *Arkwright-Boston Manufacturers Mutual Ins. Co. v. Wausau Paper Mills Co.*, No. 84–C–727–C (W.D.Wis. Apr. 10, 1986) (order denying motion for leave to amend). This statement does not describe the court's reasons for denying the motion sufficiently to allow us to review that decision. Rather than speculating on what the court meant by "denied as moot," we remand this case to allow the district court to reconsider its denial of Arkwright's request to assert an attorney's fees claim.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.