ALFRED W. BETTIGOLE, trustee,[1] *vs.* AMERICAN EMPLOYERS
INSURANCE COMPANY.

No. 89-P-1024.

Hampden. January 17, 1991. - March 21, 1991.

Present: KASS, KAPLAN, & PORADA, JJ.

*Insurance*, "All risk" policy, Coverage.

The corrosion of steel and concrete in a parking deck caused by de-icing
salts brought in on car wheels was an excluded loss under an exclusion
clause of a certain property damage insurance policy, and summary
judgment on a claim for such corrosion under that policy was properly
entered for the insurance company. [275-276]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 4, 1987.

The case was heard by *George C. Keady, Jr.*, J., on a mo-
tion for summary judgment.

*William K. Danaher, Jr.*, for the plaintiff.

*Paul S. Weinberg* for the defendant.

KAPLAN, J. We have to deal with a claim under a "Special
Multi-Peril Policy," which in less literal times might have
been called an "all risk" policy.

Medical Center Realty Trust, of which the plaintiff Bet-
tigole is trustee, owns at 130 Maple Street, Springfield, a
hospital complex of real estate and structures including a
parking deck. The parking deck with other structures was
built in 1955. About June 6, 1986, the plaintiff had reason to
believe that the deck was in poor, potentially dangerous con-
dition. Subsequent reports of investigation by a consulting
engineer, retained by the plaintiff, disclosed the following.
The deck is made of concrete with steel reinforcing rods and

---

[1]Of Medical Center Realty Trust.

other steel supporting elements. The steel at various places was suffering from corrosion (so called by the engineer), and the concrete had also deteriorated. There was little doubt about the reason. Over the years, roughly 100 cars have used the deck daily. In the colder months of the year, the cars have brought in on their wheels ice, water, and de-icing salts. The chloride ions have penetrated the concrete, filtered through the cracks, and attacked the steel. As the corrosion has progressed, the products of the process have pressed against the concrete lying above and enlarged cracks in the concrete, thereby allowing easier transit of the chloride ions. The effects mentioned could not be accounted for by any ingredients in the composition of the concrete itself, nor by the salts that might have been used from time to time by maintenance personnel in swabbing the deck to clean it.

The plaintiff duly submitted proof of loss under the policy, whose term extended for one year from September 26, 1985. As amended, the proof of loss claimed $130,000 or more in damages. When the company refused the claim, the plaintiff on June 3, 1987, commenced the present action against it.

Both parties appear to accept the substance of the facts and expert analysis as briefly stated above. Resting upon its interpretation of the relevant policy language, the defendant moved for summary judgment; the plaintiff cross-moved for partial summary judgment determining liability. A judge of the Superior Court allowed the defendant's motion and denied the plaintiff's motion. The plaintiff appeals from the adverse judgment.

Here are the policy provisions in dispute:

## "VI. PERILS INSURED AGAINST

"This policy insures against risks of direct physical loss unless the loss is excluded in VII. Exclusions below, subject to the provisions and stipulations herein and in the policy of which this form is made a part.

## "VII. EXCLUSIONS

. . .

"2. This policy does not insure under this form against loss caused by:

"A. wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect; smog; smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings, animals, birds, vermin, termites or other insects; unless loss by a peril not otherwise excluded ensues and then the Company shall be liable for only such ensuing loss . . . ."

One possible aspect of the case may first be put at rest. It is commonly said that, to be compensable under a policy of the present type, a loss must have come about by "fortuity." See *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762, 763 (1974); *HRG Dev. Corp.* v. *Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374, 376 (1988). Lately, fortuity has been taken by some courts to mean no more than that the occurrence of the loss must have appeared to the parties (or perhaps to the insured alone) as a surprise rather than an expectation or certainty. See *Compagnie des Bauxites de Guinee* v. *Insurance Co. of N. America*, 724 F.2d 369, 372-374 (3d Cir. 1983), rev'g 554 F.Supp. 1080 (W.D.Pa. 1983); *Adams-Arapahoe Joint Sch. Dist. No. 28-J* v. *Continental Ins. Co.*, 891 F.2d 772, 778 (10th Cir. 1989). The engineer's report suggests that persons knowledgeable in such matters might have had an understanding by the 1970's or 1980's of how the dripping of chloride from de-icing salts might affect a parking deck of concrete and steel. The parties, however, are not shown to belong to the cognoscenti, and at all events the defendant does not seriously press any issue regarding fortuity.

The defendant simply points to "corrosion" in the article VII exclusions, and says that the loss was so caused, giving corrosion a common meaning of a gradual wearing away of a substance by chemical action (here over a period of thirty-

one years).[2] The defendant sees no reason — nor do we — for confining the term corrosion in the context of the policy to a wearing away by "natural" means of weather or the like, or in consequence of conduct of the insured rather than an outsider. Cf. *Arkwright-Boston Mfrs. Mut. Ins. Co.* v. *Wausau Paper Mills Co.*, 818 F.2d 591, 595 (7th Cir. 1987).

The plaintiff's main contention is that the corrosion was only a secondary cause of the loss; the primary or effective cause, says the plaintiff, was the release of chloride ions, which was not named as an excluded risk, with the corrosion following as a consequence. The paradigm of this kind of contention can be found in such a case as *Franklin Packaging Co.* v. *California Union Ins. Co.*, 171 N.J. Super. 188 (App. Div. 1979). The policy covered direct loss by vandalism, but there was an exclusion for water damage. Vandals broke a valve in an air conditioning unit, which let in water, which, being blocked, backed up and damaged the insured's goods. The insured recovered. *Franklin Packaging* (at 192) cites our case of *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762 (1974). That was an all risk policy which excluded loss from below-surface water including that which flowed, seeped, or leaked through foundations, walls, or basement. A water pipe burst on property adjoining the insured's property; water collected there and escaped through the ground into the insured's basement by way of its foundation walls and floor. Again the insured succeeded. The decision may be assimilated to *Franklin Packaging* although it is perhaps not quite as clear.[3]

---

[2] We intend no suggestion whether nongradual corruption of metal by chemical action could qualify as "corrosion." It was held to do so under the policy involved in *Arkwright-Boston Mfrs. Mut. Ins. Co.* v. *Wausau Paper Mills Co.*, 818 F.2d 591, 595 (7th Cir. 1987).

[3] The *Standard Electric* case can also be read as holding that the water damage exclusion, when properly interpreted, did not extend to such damage caused by accident. See 1 Mass. App. Ct. at 765. Cf. *Mellon* v. *Hingham Mut. Fire Ins. Co.*, 19 Mass. App. Ct. 933, 934 (1984); *Safeco Ins. Co.* v. *Hirschmann*, 112 Wash. 2d 621, 635 (1989) (dissenting opinion); *Adrian Assocs.* v. *National Sur. Corp.*, 638 S.W.2d 138 (Tex. Ct. App. 1982).

The present case does not approach the paradigm. The chloride ions are not a covered risk distinct from and anterior to the corrosion, as was the vandalism or burst pipe in relation to the offending water; the chloride is the very agent of the corrosion. The distinction, paraphrasing the *Standard Elec.* opinion, 1 Mass. App. Ct. at 765-766, is between an excluded event which causes a loss (as in the present case, and see *Arkwright-Boston*, 818 F.2d at 595-596; *Resorts Intl., Inc.* v. *American Home Assur. Co.*, 311 So. 2d 806 [Fla. Dist. Ct. App. 1975]; *Twin City Hide* v. *Transamerica Ins. Co.*, 358 N.W.2d 90, 92 [Minn. Ct. App. 1984]), and a covered event which causes a loss in the form of an excluded event (as in *Franklin Packaging* and like cases).[4] It will not escape notice that if the plaintiff's view were adopted, the corrosion exclusion would tend to disappear altogether because some similar agent of the process could always be identified.[5]

*Judgment affirmed.*

---

[4]Contrast the last clause quoted from VII 2A of the present policy.

[5]The question of multiple and concurrent causes in property damage insurance lends itself to logic chopping as well as philosophic reflection. See the situation in California, *Garvey* v. *State Farm Fire & Cas. Co.*, 48 Cal. 3d 395 (1989), and Washington, *Safeco Ins. Co.* v. *Hirschmann*, 112 Wash. 2d 621 (1989).