In re John H. PERRONE, Debtor.

American Guaranty and Liability
Insurance Company,
Plaintiff,

v.

John H. Perrone and Associates, Vicki
Damphousse, Lawyers Title Insurance
Corporation, Jeffrey D. Stickles and
Jane L.M. Stickles, Defendants.

Bankruptcy No. 97–46312–JBR.
Adversary No. 97–04324–JBR.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 18, 2002.

**316**

David A. Grossbaum, Maura K. McKelvey, Cetrulo & Capon, LLP, Boston, MA, for American Guarantee and Liability Ins. Co.

Steven Gordon, Leslie F. Su, Gordon Haley, LLP, Boston, MA, Carmen L. Durso, Boston, MA, for John H. Perrone and Associates.

Sidney Gorovitz, Gorovitz & Borten, PC, Waltham, MA, for Lawyers Title Ins. Co.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This case involves a dispute over a lawyer's malpractice liability insurance contract (the "Policy") between the plaintiff, American Guarantee and Liability ("American") and defendants, John H. Perrone and Associates and Lawyer's Title Insurance Company.[1] Before the Court are two issues: (1) whether a provision in an attorney's malpractice insurance policy that bars coverage for acts occurring prior to the policy, about which an employee had knowledge, should in fact bar coverage where that employee intentionally concealed her own criminal act from the attorneys and (2) whether the proven unfair and deceptive practices committed by American caused the full amount of damages originally awarded by the Bankruptcy Court and affirmed by the District Court.

The case was originally tried in the Bankruptcy Court before the Honorable James F. Queenan, Jr. The case was appealed to the United States District Court and heard by the Honorable Mark L. Wolf. Judge Wolf affirmed in part, reversed in part, and remanded in part as explained in detail below. This Court now finds that (1) coverage should not be precluded under the "prior acts" provision of the Policy; and (2) American's unfair and deceptive trade practices did in fact cause the full amount of damages awarded.

## I. FACTS

John Perrone, an attorney and issuing agent for defendant Lawyers Title Insurance Company, in an application for malpractice insurance from American, represented that he was not aware of any circumstances which might be the basis for a claim or suit. After the policy had issued, a long-standing scheme by Perrone's office manager, Vickie Damphousse, defrauding clients of millions of dollars, was exposed. In numerous transactions involving real estate sales or mortgage refinancings, Damphousse had diverted funds intended to pay off the existing mortgages. She used the funds for other purposes, making current payments on the mortgage to mask what she was doing. Months or years later she would pay off the mortgage from other funds.

This scheme had been ongoing at the time of the application. American refused to settle claims against Perrone after conducting an investigation of the circum-

---

1. The remaining defendants, Jeffrey D. Stickles and Jane L.M. Stickles, were removed from this action for failure to prosecute their counterclaims and cross-claims.

stances surrounding the scheme on the basis that Perrone had committed a material misrepresentation on the insurance application.

American then filed a declaratory judgment action seeking recision of the Policy. Count I of the declaratory judgment action related to a question on the application for insurance submitted by Perrone. Specifically, the question asked if "after inquiry of each lawyer [covered by the insurance policy], is the applicant, its predecessor firms, or any lawyer proposed for this insurance aware of any circumstance, act, error, omission, or personal injury which might be expected to be the basis of a claim or suit?" Perrone had answered this question in the negative and American challenged the truth of that answer. Count II of the declaratory judgment action requested that the Bankruptcy Court declare that no coverage was afforded under the policy for any claims arising from acts or omissions occurring prior to the effective date of the policy because Damphousse, an employee of the insured, albeit a non-professional employee, had a reasonable basis to believe that Perrone had breached a professional duty or to foresee that a claim would be made against Perrone. Perrone then filed a counterclaim alleging that American engaged in unfair or deceptive acts or practices, in violation of Chapter 93A of the Massachusetts General Laws, arising out of American's alleged "sham" investigation of whether the acts at issue were covered.

Following the first stage of a bifurcated trial, the Bankruptcy Court ruled that (1) on Count I, in response to a question on the insurance application, Perrone had not misrepresented his knowledge of any possible acts, errors or omissions which might be expected to lead to a claim or suit, and that American was therefore obligated to settle claims on the policy; (2) American

had waived Count II by not pursuing it at trial; and (3) American had committed unfair and deceptive trade practices in its investigation of Perrone's claim. The Bankruptcy Court found that American's actions were in violation of Chapter 93A and awarded treble damages to Perrone and double damages to Lawyers Title.

On appeal, the District Court affirmed the Bankruptcy Court's decision on Count I. The District Court, however, reversed the Bankruptcy Court's decision that American had waived Count II and remanded Count II to the Bankruptcy Court for further proceedings. On the issue of damages, the District Court affirmed the Bankruptcy Court's finding that American violated Chapter 93A, but determined that double and treble damages were not appropriate. Instead, the District Court set damages in the amount allowed by the Bankruptcy Court before enhancement, namely $549,418.66 for Perrone and $823,058 for Lawyer's Title. In a subsequent Memorandum and Order, however, the District Court expressed its concern that perhaps not all of the awarded damages were caused by the unfair and deceptive trade practices and therefore instructed the Bankruptcy Court on remand to determine the amount of damages caused by those acts.

## II. DISCUSSION

The first question confronting this Court is the proper scope of the issues to be decided on remand. The mandate rule instructs an inferior court to comply with the instructions of a superior court on remand. *United States v. Rivera–Martinez*, 931 F.2d 148, 150 (1st Cir.1991). In this case the District Court was clear in its analysis and instructions. The District Court concluded that Count II had not been waived as the Bankruptcy Court had originally concluded. The District Court

also instructed the Bankruptcy Court to "consider further the evidence presented at trial and to decide whether the unfair practices of American Guarantee that have been proven caused the full amount of damages previously awarded and affirmed" by the District Court, *American Guarantee v. Perrone*, No. 99–40076 at 5 (D.Mass. March 29, 2002). If the full amount of damages were not caused by the Chapter 93A violation, this Court was instructed to revise the damages accordingly.

To the extent that neither party has objected to any specific facts found by the Bankruptcy Court, this Court adopts as undisputed the Bankruptcy Court's findings of fact, subject to any findings that would be inconsistent with the District Court's finding that Count II was not waived by American. No additional evidence is deemed to be necessary, as the memoranda submitted by the parties and the transcript of the trial record are sufficient to decide the questions remanded by the District Court.

*Count II.*

Count II requests a declaration that no coverage was afforded under the Policy for any claims made during the policy period but arising from acts or omissions occurring prior to the effective date of the policy if any employee of the insured had a reasonable basis to believe that the insured had breached a professional duty or to foresee that a claim would be made against the insured. This argument relies on specific language in the Policy, namely an exclusion that is within the general coverage section of the Policy. This exclusion removes from coverage claims that are made during the policy period for pre-policy acts, errors or omissions if an employee had a "reasonable basis to believe that the Insured had breached a professional duty or to foresee that a claim would be made against the Insured" (the "prior acts" provision).[2]

■ A plaintiff seeking to recover for breach of a duty or obligation created by a general clause of the contract, which also contains an exception descriptively limiting such duty or obligation, must allege and prove that his cause of action is within the contract and outside the exception, *Brown Daltas & Associates, Inc. v. General Acci-*

**2.** The relevant section of the policy reads as follows:

1. Professional Liability and Claims Made Clause: To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD caused by any act, error, or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer or notary public...
PROVIDED ALWAYS THAT such act, error or omission happens:
(a) during the policy period; or,

(b) prior to the policy period, provided that prior to the effective date of the first Lawyers Professional Liability Insurance Policy issued by this Company to the Named Insured or predecessor law firm and continuously renewed and maintained in effect to the inception of this policy period:
1) The Insured did not give notice to any prior insurer of any such act or error, and
2) **The Named Insured, any partner, shareholder, *employee*, or where appropriate the Named Insured's management committee or any member thereof, had no reasonable basis to believe that the Insured had breached a professional duty or to foresee that a claim would be made against the Insured;** and
3) There is no prior policy or policies ... (emphasis added)

*dent Insurance Company of America,* 48 F.3d 30, 37–38 (1st Cir.1995). But where the exception is in another separate and distinct clause of the contract, defining the duty or obligation, then the burden is upon the party relying upon the exception. *Id.* This case falls under the former description, rather than the latter. The prior acts provision is found within the general coverage section of the policy. Therefore, the burden was on Perrone to show that the general coverage is available and that the prior acts provision does not apply.

The general coverage section of the Policy provides that coverage is available for claims made against the "Insured during the policy period and reported to the company during the policy period caused by any act, error or omission for which the Insured is legally responsible and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer." The facts, as found by the Bankruptcy Court, and adopted by this Court, make clear that Perrone reported the claims arising from the Damphousse scheme to American during the policy period and that the claims arose directly out of Perrone's failure to discharge mortgages, even though he believed that he had taken the necessary steps to do so. *American v. Perrone & Associates,* No. 97–4324 at 8 (Bankr. D.Mass. July 30, 1998). Accordingly, Perrone has met his burden of proving that the requirements of the general coverage section of the Policy have been met.

Perrone, however, must also prove that the prior acts provision of the Policy does not apply. Perrone argues that the prior acts provision should not apply because the Damphousse "lapping scheme" was unknown to him. The validity of this argument turns on interpretation of the prior acts provision of the Policy.

Interpretation of an insurance contract is no different from interpretation of any other contract. *Citation Insurance Company v. Gomez,* 426 Mass. 379, 381, 688 N.E.2d 951, 952 (1998). In examining an insurance contract, the Court should consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993) (quoting *Hazen Paper Co. v. United States Fidelity & Guaranty Co.,* 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990)). If there is no ambiguity, then the Court is to construe the words of the policy in their usual and ordinary sense. When the language of an insurance contract is ambiguous, however, the Court is to interpret in it in the way most favorable to the insured. *Hazen,* 407 Mass. at 700, 555 N.E.2d. at 583.

This Court believes that the purpose of this prior acts provision was to protect American against claims based on reasonably foreseeable, but undisclosed, risks. An objectively reasonable attorney, would expect coverage to include all claims made during the policy period, except claims arising from prior acts known to the insured which he did not disclose to the insurer.

This analysis is consistent with that of the Massachusetts Supreme Judicial Court in *SCA Services, Inc. v. Transportation Insurance Co.,* 419 Mass. 528, 532–33, 646 N.E.2d 394 (1995).

[T]he basic purpose of insurance is to protect against fortuitous events and not against known certainties. Parties wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty. *Bartholomew v. Appalachian Ins. Co.,* 655 F.2d 27, 29 (1st Cir.1981). It follows from this general principle that an in-

sured cannot insure against the consequences of an event which has already begun. *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 63 (3d Cir. 1982). Once the risk is eliminated, the contract for insurance no longer exists. *Bartholomew v. Appalachian Ins. Co., supra.* Courts have found that the insurable risk is eliminated in the instance where an insured knows, when it purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss. At that point, the risk ceases to be contingent and becomes a probable or known loss. When the insured has evidence of a probable loss when it purchases the policy, the loss is uninsurable under that policy. See *Outboard Marine Corp. v. Liberty Mut. Ins. Co., supra* [154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992)]. This rule has been recognized in Massachusetts and by leading authorities on the subject of insurance. See *Bettigole v. American Employers Ins. Co.*, 30 Mass.App.Ct. 272, 274, 567 N.E.2d 1259 (1991); Couch, Insurance §§ 1.5, 2:7 (rev.2d ed.1984); R. Keeton & A. Widiss, Insurance Law § 4 (1988).

█ The Bankruptcy Court's findings of fact, left undisturbed by the District Court, are clear: as far as Perrone (or any other Insured) was concerned, the Damphousse scheme was not a "known certainty." Perrone was utterly unaware of Damphousse's scheme at the time he applied for the American policy. Moreover, as Judge Queenan noted, it is inconceivable to think that Damphousse would have revealed to Perrone that she was diverting millions of dollars from clients if he had asked her in the context of a malpractice insurance application if she had a reasonable belief that a malpractice claim would be made against him at some point in the future. *American v. Perrone & Associates*, No. 97–4324 at 3–4 (Bankr.D.Mass.

February 26, 1999). Therefore, this Court concludes that the prior acts provision does not preclude coverage arising from an employee's undisclosed and undiscoverable knowledge of his or her own wrongdoing. To find otherwise would thwart the very purpose of the Policy.

A New York Court reached this same conclusion when confronted with a similar insurance policy and similar facts. In *Fuchsberg & Fuchsberg v. Chicago Insurance Co.*, 2001 WL 484013 at *7 (S.D.N.Y. May 7, 2001), the court concluded that a prior acts provision, with language identical to that of the prior acts provision in this case, did not preclude coverage under a claims made policy where an associate in a law firm did not inform the partners in the firm that, due to his negligence, a medical malpractice case had been dismissed before the inception date of the policy. Even though that policy had language stating that acts occurring prior to the policy period would not be covered if an employee had a reasonable basis to believe that a claim would be made against the insured, the court did not impute the employee's knowledge to the law firm and allowed coverage under the policy. Although the *Fuchsberg* court ultimately reached its decision on grounds of collateral estoppel, it concluded that the Supreme Court of New York Appellate Division had implicitly decided that a prior acts provision (identical to the prior acts provision in *Holloway* and this case) did not preclude coverage to the law firm where one of its associates had concealed his own malpractice. See *Holloway v. Sacks and Sacks, Esqs.*, 275 A.D.2d 625, 626, 713 N.Y.S.2d 162 (N.Y.App.Div.2000). The two New York cases read together stand for the proposition that a prior acts provision should not preclude coverage arising from an employee's undisclosed and undiscoverable knowledge of his or her own wrongdo-

ing. This Court adopts that line of reasoning.

*Damages*

The Bankruptcy Court initially awarded damages in the amount of $1,453,262.66 to Perrone and $1,596,131 to Lawyers Title (in addition to amounts already paid in settlement). *American v. Perrone & Associates*, No. 97–4324 at 20–22 (Bankr. D.Mass. February 26, 1999). Central to the Bankruptcy Court's finding that American violated Chapter 93A was the manner in which American conducted its coverage investigation. *See id.* at 14–17. A good-faith, reasonable investigation should have caused payment of at least some of Perrone's claims and may have led to an agreed-upon resolution of the allocation of responsibility for all of his claims. *See id.* at 23. Nevertheless, American's investigation and subsequent coverage declination focused on determining what Perrone knew, and when he knew, of the defalcations, rather than on determining which defalcations occurred before the issuance of the Policy. *See id.* at 9, 14.

The District Court reduced the amount of damages awarded from $1,453,262.66 for Perrone and $1,596,131 for Lawyer's Title to $549,418.66 and $823,058, respectively. *American Guarantee v. Perrone*, No. 99–40076 at 28 (D.Mass. March 13, 2001). This reduction was the result of the District Court's finding that double and triple damages on the Chapter 93A claim were not appropriate.

In a subsequent order, the District Court instructed this Court to "consider further the evidence presented previously at trial and to decide whether the unfair practices that have been proven caused the full amount of damages previously awarded" by the Bankruptcy Court and affirmed by the District Court. *American Guarantee v. Perrone*, No. 99–40076 at 5 (D.Mass. March 29, 2002). The District Court re-manded on this issue because if this Court were to conclude that the arguments raised in Count II justified American's refusal to pay Perrone's claim, then the Bankruptcy Court's conclusion that American's improper investigation was solely responsible for the costs of the court proceeding could also be revised.

This Court, however, has concluded that even though Count II was not waived, the prior acts language did not preclude coverage under the Policy. Therefore, the Bankruptcy Court's calculation of damages remains valid, subject to the decision of the District Court to strike double and triple damages.

In addition, the Court has the option to add attorney fees for the appeal and the case on remand. *Linthicum v. Archambault*, 379 Mass. 381, 388–389, 398 N.E.2d 482, 488 (1979). While the amount of a reasonable attorney's fee is largely discretionary, the judge on remand should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. *Id.* In this case the Court believes that it is appropriate to add the cost of Lawyers Title's and Perrone's attorney fees from the appeal and the case on remand, as well as any unpaid post-judgment interest, to the amount of damages awarded. The parties shall file an appropriate fee application and an interest calculation with the Court by November 15, 2002.

A separate order will enter.