OPINION
{¶ 1} Third-party plaintiff-appellant, The Altman Company ("Altman"), appeals from the judgment of the Franklin County Court of Common Pleas denying its motion for summary judgment and granting summary judgment to third-party defendant-appellee, ACE Property Casualty Insurance Company ("ACE"). For the reasons that follow, we affirm.
 {¶ 2} Altman and ACE filed with the trial court a stipulated statement of material facts for purposes of their respective motions for summary judgment. According to the stipulated facts, "Gilbane Building Company ('Gilbane') was hired to be the construction manager for the construction of a new facility in Columbus, Ohio for Chemical Abstract Services ('CAS')." (Feb. 28, 2003, Stipulated Facts, at 2.) Gilbane entered into a contract with Altman, "whereby Altman agreed to work as a trade contractor to provide cast-inplace concrete for the building." Id. The contract "called for Altman to `etch' the concrete floor, which essentially involves removing the chemical agents used to cure the concrete floor and to rough the surface of the floor so it can receive the final sealant and treatment." Id. at 3. "Altman performed the concrete floor etching in January and February 2001 in the mechanical/electrical rooms of the building and the UPS rooms." Id.
 {¶ 3} The method selected to perform the etching process was to use a muriatic acid product called E-Z Muriatic Acid. The directions on the product bottle directed the user to dilute the acid before using. Altman admitted that it "was negligent in its mixture, use and application of the E-Z Muriatic Acid in that it did not properly dilute the acid before applying it to the concrete floor." Id. at 4. "Altman's mixture, use and application of the E-Z Muriatic Acid caused an acid vapor to form in the electrical/mechanical rooms in which the concrete floor etching was performed." Id. at 5.
 {¶ 4} In early February 2001, representatives of CAS informed Gilbane that "they had observed discoloration of the stainless steel door hardware, switch plates and copper piping" in the rooms where the concrete floor was etched. Id. "The corrosion and rust on the metal surfaces of the equipment and piping in the electrical/mechanical rooms and UPS rooms in which the etching was performed was caused by acid vapor in the air reacting with the metal surfaces of the equipment and piping, and forming corrosive reactions." Id. The equipment and piping that was damaged as a result of the rust and corrosion has either been replaced or repaired.
 {¶ 5} Litigation ensued over the project. Gilbane filed a complaint against Altman, Ohio Farmer's Insurance Company, and Westfield Insurance Company ("Westfield"), who issued a commercial liability policy to Altman. Altman filed a third-party complaint against ACE, as an insured under a builder's risk policy issued by ACE to CAS. The parties filed various motions for summary judgment in the trial court. In a lengthy decision, the trial court resolved many of the outstanding issues between and among the parties. As a result of the trial court's decision, and before a judgment entry was filed, the parties participated in mediation and settlement negotiations, which resulted in a majority of the claims being settled. However, one of the issues not resolved by the parties was Altman's claim against ACE. By way of judgment entry, the trial court dismissed all claims with prejudice, except those by and between ACE, Altman and Westfield. In the same judgment entry, the court entered judgment in favor of ACE against Altman declaring that the builder's risk policy issued by ACE did not provide insurance coverage. Specifically, in the trial court's decision, the trial court determined that the "faulty workmanship" exclusion and the "rust and corrosion" exclusion in the policy issued by ACE barred coverage as to Altman, and thus granted summary judgment in favor of ACE.
 {¶ 6} On appeal, Altman asserts the following assignment of error:
The trial court erred as a matter of law in granting third-party defendant ace property casualty insurance company's motion for summary judgment and in denying third-party plaintiff the altman company, inc.'s motion for summary judgment.
 {¶ 7} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 8} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 9} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher; supra; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41-42.
 {¶ 10} Since the parties have stipulated to the facts of this case, there is no genuine issue of material fact for this court to consider. Rather, this case turns on the stipulated facts when matched to the provisions of the builder's risk policy issued by ACE and the exclusions contained therein. "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. Words and phrases used in insurance policies "`must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'" Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 12, quoting Gomolka v. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166,167-168. Ambiguities in insurance policies should be construed liberally in favor of coverage. Yeager v. Pacific Mut. Life Ins. Co. (1956),166 Ohio St. 71, paragraph one of the syllabus.
 {¶ 11} A builder's risk policy, like the one issued by ACE, is primarily designed to insure against catastrophic losses to the property. The types of losses contemplated are those related to events such as fire, flooding and hurricanes. Altman argues that the "rust and corrosion" exclusion in the builder's risk policy issued by ACE does not clearly and unambiguously exclude coverage for a fast-acting chemical reaction, and therefore, Altman is entitled to coverage pursuant to the policy. The "rust and corrosion" exclusion provides in pertinent part:
We will not pay for loss caused by or resulting from any of the following, except as provided under Automatic Extensions of Coverage.
* * *
d. (1) Wear and tear;
(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in the property that caused it to damage or destroy itself;
* * *
But if loss from Specified Causes of Loss or building glass breakage results, we will pay for that resulting loss.
 {¶ 12} Altman argues that while the parties stipulated that the loss is due to rust and corrosion, which is excluded under the policy, the court should apply the commonsense and ordinary understanding of the terms "rust" and "corrosion," and conclude that a "fast-acting, acid-based chemical reaction," which undisputedly caused the rust and corrosion in this case, is not the type of rust and corrosion intended to be excluded under the policy. In support of its position, Altman relies on Heban v. Auto-Owners Ins. Co., Wood App. No. WD-02-264, 2003-Ohio-4218. In Heban, panes of glass were stored outside, and exposed to the elements for a period of two years. The experts agreed that the panes of glass were corroded, but disagreed as to how long it took for the panes of glass to corrode. The insurance policy at issue in Heban excluded "maintenance type losses" including, "[r]ust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." Id. at P. 20. The court in Heban
stated:
Thus, the only dispute between the experts seems to be the length of time for the condition to have occurred. Although they may differ on how long it might take for corrosion of the panes, both experts agree that corrosion is caused by chemical reactions happening when moisture is trapped between the panes of glass.
In addition, Heban acknowledged in his deposition that he did not cover or store the glass to protect it from exposure to moisture. Thus, no matter whether the corrosion occurred in two years, two weeks, or two days, reasonable minds could only conclude that it was caused by Heban's own improper storage and maintenance of the glass. In our view, under the plain and ordinary meaning of the terms of the insurance contract, the damage to the glass was properly excluded as maintenance type corrosion. Therefore, we conclude that summary judgment was properly granted in favor of appellee since no material facts remain in dispute and reasonable minds could only conclude that appellant is entitled to judgment as a matter of law.
Id. at ¶ 22-23.
 {¶ 13} It is important to note that the policy in Heban excluded "maintenance type" losses. The policy at issue in the case sub judice simply provides that any loss caused by rust or corrosion is not covered. A close reading of Heban actually supports ACE's position. The court in Heban held that regardless of whether the corrosion occurred over "two years, two weeks, or two days," it was clear that the corrosion was due to Heban's own improper storage and maintenance of the glass, thus rendering it maintenancerelated corrosion that was excluded under the policy. It was irrelevant to the court in Heban how long it took for the rust and corrosion to form because the parties agreed that the damage was due to rust and corrosion, and it was established that the rust and corrosion was due to the negligence of Heban. The ACE policy excludes coverage for loss due to rust and corrosion, and does not qualify the exclusion by limiting its application to only long-term rust or corrosion as opposed to rust or corrosion that forms quickly. Therefore, to find that coverage is available, this court must find that the words "rust" and "corrosion" mean only rust and corrosion that forms gradually. However, there is nothing in Heban to suggest that such an interpretation is required; in fact, the court in Heban suggests that the terms "rust" and "corrosion" include either rust and corrosion that forms gradually, or rust and corrosion that forms quickly.
 {¶ 14} Altman also urges this court to consult Arkwright-BostonManufacturers Mut. Ins. Co. v. Wausau Paper Mills Co. (C.A.7, 1987),818 F.2d 591. In Arkwright, the insured sought to recover damages sustained to a steel reactor caused by sulfuric acid forming in the reactor and causing corrosion. The policy excluded from coverage loss caused by "rust and corrosion." The insured argued that the damage was not caused by corrosion, but by a sudden "acid attack" due to the negligence of its employees. The court held that the damage was "corrosion" and thus precluded under the exclusion, and that such was "precisely the type of corrosion the policy was intended to exclude." Id. at 596. Altman argues that the court in Arkwright applied the dictionary definition of the term "corrosion" to the case before it and found that the damage was corrosion pursuant to the ordinary understanding of the word corrosion. However, how the corrosion occurred in Arkwright appears immaterial. There is nothing in the opinion to suggest that the speed at which the corrosion occurred was critical to the court's determination of whether or not the damage at issue was caused by corrosion. In this case, unlike Arkwright, there is no dispute, and, in fact, it is stipulated that the damage is rust and corrosion.
 {¶ 15} Altman also relies on S.W. Energy Corp. v. Continental Ins.Co. 1999 UT 23, 974 P.2d 1239. However, in S.W. Energy Corp., the issue was whether or not a loss was caused by rust and corrosion, not how long it took for the corrosion to form. The decision does not offer an opinion relevant to this court's inquiry, which is whether or not ACE's policy should be interpreted as excluding only slow forming rust and corrosion.
 {¶ 16} Similarly, Bettigole v. American Employers Insurance Co.
(1991), 30 Mass.App.Ct. 272, 567 N.E.2d 1259, offers no comment on whether only gradually forming corrosion is excluded under a policy with a rust and corrosion exclusion, as opposed to fast-forming rust or corrosion. The court in Bettigole was faced with the issue of whether or not the damage was excluded under the policy's rust and corrosion exclusion or whether the corrosion was only a secondary cause of loss, with the corrosion following as a consequence. In Bettigole, the insured made a claim for damage to a parking deck. De-icing salts caused the damage to the parking deck due to chloride ions filtering through the cracks in the concrete and corroding the steel frame. The insured argued that the corrosion was a secondary cause of the loss, as the release of chloride ions was the primary cause of loss. The court rejected the insured's argument and held that coverage was barred by the rust and corrosion exclusion. The court reasoned that if plaintiff's view were adopted, "the corrosion exclusion would tend to disappear altogether because some similar agent of the process could always be identified." Id. at 1262.
 {¶ 17} Also, relied on by Altman is Central International Co. v.Kemper Natl. Ins. Cos. (C.A.1, 2002), 202 F.3d 372. In that case, steel coils were placed on a cargo ship in Spain for delivery to the West Indies. When unpacked in the West Indies, the coils were corroded. The court found that coverage for the damage was not available because of the policy's rust and corrosion exclusion. The policy in CentralInternational covered all risks of "physical loss or damage [to the cargo] from any external cause," but also contained an exclusion that provided, "[h]owever, as respects steel products and all metals: excluding rusting, oxidation, discoloration and corrosion; also excluding bending, twisting, crimping, and end damage." Id. at 373. However, because of the language in the policy in Central International, the timing of the corrosion to form was not an issue in the case. There is no suggestion that quick forming corrosion was not covered and only gradual forming rusting or corrosion was covered.[1]
 {¶ 18} The ACE policy bars coverage for loss resulting from rust and corrosion. The policy does not qualify this exclusion to cover only gradual-forming rust and corrosion or fast-forming rust and corrosion. The parties have stipulated that the loss at issue here was due to corrosion and rust on the metal surfaces of the equipment and piping in the electrical/mechanical rooms and the UPS rooms in which the etching was performed. Therefore, this court finds that the "rust and corrosion" exclusion in the policy provided by ACE bars coverage.
 {¶ 19} An exception to the "rust and corrosion" exclusion is if the loss is caused by a "specified cause of loss." With respect to specified causes of loss, the policy states in part:
Specified Causes of Loss mean the following: Fire, lightning, explosion, windstorm or hail, smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment;sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.
 {¶ 20} Altman argues that the muriatic acid vapor is considered "smoke," and thus, coverage is available pursuant to the exception to the "rust and corrosion" exclusion. Here, Altman relies on MidwestSpecialties, Inc. v. Westfield Ins. Co. (Apr. 1, 1994), Montgomery App. No. 14027. However, as argued by ACE, Midwest Specialties concerned an issue of fact as to whether the resulting damage was caused by smoke or acid vapor, because the parties' experts used the terms interchangeably. In the present case, it is undisputed that the rust and corrosion was caused by an acid vapor as evidenced by the parties' stipulated facts. Given that the rust and corrosion in this case was caused by an acid vapor and such is not included in the list of "specified causes of loss," this court finds that the exception to the "rust and corrosion" exclusion is not applicable.
 {¶ 21} Because this court finds that coverage is not available to Altman due to the rust and corrosion exclusions in the policy, and because this court finds that no exception to the exclusion applies, Altman's remaining arguments regarding the "faulty workmanship" exclusion are rendered moot and need not be addressed by this court.[2]
 {¶ 22} For the foregoing reasons, we overrule Altman's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and French, JJ., concur.
[1] Altman concedes in its brief that "[a]lthough one might point toCentral International as a case in which the length of time for the discoloration and corrosion to develop was relatively short, the case is distinguishable because of the exclusionary language at issue and because the court simply did not address the `damage over time' concept." Altman's brief, at 25.
[2] The parties conceded during oral argument that if this court were to find that coverage is barred due to the "rust and corrosion" exclusion, the court need not address the arguments relating to the "faulty workmanship" exclusion.